**UNITED STATES of America**

v.

**Noel RIVERA, Defendant.**

**No. 88 Cr. 0059 (PNL).**

United States District Court,
S.D. New York.

Sept. 20, 1988.

Rudolph W. Giuliani, U.S. Atty., S.D. N.Y., New York City (Martin Klotz, Asst. U.S. Atty., of counsel), for U.S.

The Legal Aid Soc., Criminal Defense Div., New York City (Paul Davison, Associate Atty., of counsel), for defendant.

## OPINION AND ORDER

LEVAL, District Judge.

Defendant, Noel Rivera, challenges the application to his sentence of section 4B1.3 of the United States Sentencing Commission's Sentencing Guidelines, providing a sentence enhancement for a defendant who commits an offense "as part of a pattern of criminal conduct from which he derived a substantial portion of his income." United States Sentencing Commission, Sentencing Guidelines & Policy Statements § 4B1.3.

Rivera was convicted after a trial before a jury of distributing two glassine envelopes of heroin within 1000 feet of a

public school in violation of 21 U.S.C. §§ 812, 841(a)(1), 841(b)(1)(C), and 845a(a). At trial, the Government introduced evidence from which it could be found that the defendant directed an undercover agent of the New York City police force to two individuals who then sold her two bags of heroin. At the time of his arrest, defendant had $2.00 in his possession. In a post-arrest statement, Rivera stated, "I do make my money selling drugs." The post-arrest statement concludes with a summary of Rivera's statement to the effect that "To buy food, he begs or sells drugs."

The Probation Department calculated guidelines for Rivera's sentence based on the United States Sentencing Commission's Sentencing Guidelines. Rivera has two prior convictions—a July 1987 misdemeanor for possession of a controlled substance (cocaine and heroin) and a January 1988 felony of attempted criminal possession of a controlled substance (heroin). Both convictions arose out of Rivera's attempted sale of controlled substances to undercover police agents. The Probation Department gave Rivera a criminal history score of five to which he has not objected. The base offense level of 11 for Rivera's offense should give him a sentencing guideline of 12 to 18 months. The Probation Department, however, also determined that a sentence enhancement was required on the grounds of criminal livelihood. Applying § 4B1.3, which provides a minimum offense level score of 13, the Department calculated Rivera's guidelines at 18 to 24 months.

Rivera challenges the Probation Department's determination that § 4B1.3 is applicable. Apparently conceding that his prior convictions are sufficient to make out "a pattern of criminal conduct," he argues that he did not derive "a substantial portion of his income" from that conduct within the intendment of the guideline and its authorizing statute. Specifically, he notes that he had only two dollars in his possession at the time of his arrest, that the post-arrest statement indicates that he begs to make money, and that the Government has failed to introduce any evidence of the income that he derives from criminal activity.

The guideline at issue, § 4B1.3, is written in somewhat ambiguous language. It provides:

> If the defendant committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income, his offense level shall not be less than 13, unless 3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall not be less than 11.

A prison term is mandated for offenders with an offense level of 13.

The guideline admits of at least two possible meanings. The statutory language "substantial portion of his income" can be interpreted in relative terms to provide a sentence enhancement (and a mandatory prison term) whenever the income received from a pattern of criminal activity constitutes a substantial percentage of the defendant's annual income. Under this interpretation, both the Government and, apparently, the defendant concede that Rivera would receive a sentence enhancement. The evidence shows that Rivera is indigent and has very little income. Any proceeds that he receives from criminal activity therefore would constitute "a substantial portion," defined as percentage of his income.

Alternatively, however, the guideline can be construed to require an enhanced sentence only for those offenders who receive a "substantial" income from a pattern of criminal activity. Under this interpretation, the guideline would apply to offenders for whom the portion of their income derived from the pattern of criminal activity is sufficiently large in amount to be considered "substantial."

I conclude that the latter interpretation is correct and that § 4B1.3 should be applied only when the defendant derives substantial income, defined in absolute terms, from criminal activity. This interpretation is a reasonable construction of the statutory language and is most consonant with the purpose and legislative history of the guideline. *See Consumer Products Safety Commission v. GTE Sylvania, Inc.*, 447

U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed. 2d 766 (1980).

The guideline is based on the moral assessment that those who take more from society are more culpable and the empirical assessment that those who derive substantial income from criminal activity are more likely to be recidivists.[1] The Government argues in support of its interpretation that the guideline is aimed at the defendant's propensity to criminality as a way of life. But that interpretation does not effectively focus on propensity to criminality. For example, the defendant who transports alligator grass or water chestnut plants in interstate commerce in violation of 28 U.S. C. § 46 four or five times for a friend and receives $15 to pay for gas would come under the criminal livelihood provision if that person had very little other income. Yet that person hardly seems the type of professional criminal against whom the guideline was targeted. The Government's interpretation seems anomalous, as it centers more significantly on the defendant's poverty than on the profitability of his criminal adventures. Thus a college student with no income who for a few dollars profit shares marijuana with a friend will be covered while someone who engaged in a substantial scale of narcotics dealing would not come under the guideline if that person had a comparatively large source of other income. *See* ABA Standards for Criminal Justice ¶ 18–2.5, at 18–126 (2d ed. 1980). The percentage of a person's income that is derived from criminal conduct would not appear to be a good indicator of propensity to criminality. *Cf. Bearden v. Georgia*, 461 U.S. 660, 671, 103 S.Ct. 2064, 2072, 76 L.Ed.2d 221 (1983) (rejecting assertion that "a probationer's poverty by itself indicates he may commit crimes in the future"). To the contrary, the person who derives a substantial amount of income from criminal activity is both more culpable

and seems as likely to recidivate. *See* ALI, Model Penal Code § 7.03 comment 5 (1985).

The Sentencing Commission's enabling act and the guideline's legislative history indicate that, contrary to the Government's position, the guideline was targeted not at those who have a small legitimate income, but at those who derive large enough income from criminal activity that they can be considered likely to recidivate. The Sentencing Reform Act, under which the guidelines are promulgated, requires that "the guidelines and policy statements [be] entirely neutral as to the race, sex, national origin, creed, *and socio-economic status* of offenders." 28 U.S.C. § 994(d) (emphasis added). The Act further provides that "[t]he Commission shall assure that the sentencing guidelines and policy statements, in recommending a term of imprisonment or length of a term of imprisonment, reflect the general inappropriateness of considering ... employment record ... of the defendant." 28 U.S.C. § 994(e).[2] It would be wholly contrary to these provisions (and might also raise constitutional questions, *see United States v. Kerr*, 686 F.Supp. 1174 (W.D.Pa.1988)), for the Commission to have required a term of imprisonment for every indigent defendant who engages in a pattern of criminal conduct without mandating similar treatment for the wealthy defendant who derives substantial income from criminal activity.

The guideline itself is adopted from virtually identical language in the Dangerous Special Offender provisions of titles 18 and 21, *see United States v. Felder*, 706 F.2d 135, 140 n. 5 (3d Cir.1983), which addressed the absolute amount of income derived from criminal activity. Section 4B1.3 is drawn under section 994(i)(2) of title 28 which provides: "[t]he Commission shall assure that the guidelines specify a substantial term of imprisonment for categories of defendants in which the defendant committed the offense as part of a pattern of criminal conduct from which he derived

---

1. The guidelines already penalize the defendant for the number of prior offenses in its criminal history provisions. *See* Sentencing Guidelines & Policy Statements ch. 4.

2. The Commission is empowered to consider the relevance of the defendant's employment record to the *attributes* of sentence (including recommendation of designation to an institution with a particular type of vocational training or educational program). 28 U.S.C. § 994(d)(6).

a substantial portion of his income." 28 U.S.C. § 994(i)(2). The Dangerous Special Offender statutes, repealed by the Sentencing Reform Act, provided a sentence enhancement when the defendant committed the felony "as part of a pattern of conduct ... which constituted a substantial source of his income, and in which he manifested special skill or expertise." 18 U.S.C. § 3575(e); 21 U.S.C. § 849(e)(2). The provisions further define "substantial source" of income in terms that incorporate an absolute standard as "a source of income which for any period of one year or more exceeds the minimum wage determined on the basis of a fifty hour week and fifty week year ... under section 206(u)(1) of title 29 ... and which for the same period exceeds fifty percent of the defendant's declared adjusted gross income under section 62 of title 26." 18 U.S.C. § 3575(e); 21 U.S.C. § 849(e).

The Government contends that the omission of a specific amount of money and reference to "portion of income" rather than "source of income" is indicative of a congressional and Commission intent to focus on the percentage of income derived from criminal activity and not the amount. That suggestion finds no support in—indeed, is contrary to—the legislative history. The Senate and House Reports indicate that the criminal livelihood provision is "derived from the dangerous special offender sentencing provisions now contained in 18 U.S.C. § 3575(e) and the dangerous special drug offender provisions of 21 U.S.C. § 849(e)." S.Rep. No. 225, 98th Cong., 1st Sess. 176 (1983); *reprinted in* 1984 U.S. Code Cong. & Admin.News 3182, 3359. The Senate Committee Report specifically states "the guidelines provide an appropriate means for embodying the same considerations which are contained in current dangerous special offender statutes." S.Rep. No. 98–225, at 120, 1984 U.S.Code Cong & Admin.News at 3303.

The omission of a specific monetary amount in the guideline and the Act does have some significance.[3] It indicates that the "substantial portion" of income to

which the guideline refers is not to be measured according to a rigid statutory formula, but rather is to be developed on a case-by-case basis. *But see United States v. Kerr*, 686 F.Supp. 1174, 1178 (W.D.Pa. 1988) (adopting statutory formula for application of guideline). It provides no support for the contention that the Act penalizes a defendant on the basis of the percentage alone of income he derives from criminal activity.

## CONCLUSION

Section 4B1.3 of the guidelines provides a sentence enhancement for a defendant who derives a "substantial portion" of income defined in absolute terms from a pattern of criminal activity. Although the defendant's small income from drug selling is a large percentage of his tiny overall income, the Government has introduced no evidence that Rivera derived substantial income from criminal activity, and, indeed, the evidence appears to be precisely to the contrary. Accordingly, the sentence enhancement is not applied to Rivera's guideline determination and Rivera is sentenced according to the offense severity and criminal history scores set forth by the Probation Department for his offense.

SO ORDERED.

---

**3.** I attach no significance to the change in language from "source of income" to "portion of income".