**UNITED STATES of America,**

v.

**Donald C. HEWITT, Defendant.**

**No. 89 Cr 0025 (RWS).**

United States District Court,
S.D. New York.

Aug. 2, 1989.

SENTENCING OPINION

SWEET, District Judge.

Defendant Donald C. Hewitt ("Hewitt") has pleaded guilty to one count of trafficking, producing and using counterfeit credit cards, 18 U.S.C. § 1029. For the reasons set forth below, Hewitt is sentenced to 18 months of imprisonment.

*The Facts* [1]

Hewitt was arrested on December 30, 1988 after he and his companion had attempted that day to use a counterfeit American Express card to purchase a tuxedo. A search of Hewitt and his automobile uncovered several additional counterfeit or altered credit cards as well as a list of 32 credit card account numbers.

---

1. This statement of facts draws on the Presentence Report prepared by the U.S. Probation Office, the Addendum to the Presentence Report for Hewitt, and additional materials provided by the probation officer and the counsel for the defendant.

The current offense is not Hewitt's first brush with the laws governing illegal use and possession of credit cards. His Presentence Report indicates prior arrests in 1976 and in 1978, in both cases for offense conduct that included possession of stolen credit cards. The former arrest, which may or may not have been dismissed,[2] resulted in a two year remand to federal prison for violation of a special parole term. The disposition of the second arrest is unknown. Hewitt was again arrested in 1982 on charges that included possession of stolen credit cards. On that occasion, Hewitt pleaded guilty to a related charge of possessing stolen property, and was sentenced to pay a fine or serve 10 days.

Hewitt's criminal history also includes a five year federal sentence for smuggling marijuana imposed in 1973, and a 1969 arrest for illegal drug importation.

### The Guidelines as Applied in the Presentence Report

The probation officer's conclusions regarding application of the United States Sentencing Guidelines (the "Guidelines") were as follows:

OFFENSE LEVEL
1. Offense Level
   § 2F1.1 Fraud and Deceit ............................ 6
2. Victim–Related Adjustments ...... 0
3. Role in the Offense Adjustment .......................... 0
4. Obstruction Adjustment .......... 0
5. Acceptance of Responsibility Adjustment................... −2
   Total Offense Level ............. 4

CRIMINAL HISTORY
1. Violation of Special Parole Term (January 1977—Attempted Criminal Possession of Stolen Property and Failure to Report Arrest).......... 3
2. Forgery/Criminal Possession of Stolen Credit Cards and Property (September 1982) .... 1
   Criminal History Category ......III

The Sentencing Table provides for an imprisonment range of zero to six months for an offender with an offense level of four and a criminal history category of III. The probation officer's report recommended a sentence of six months, but nevertheless concluded that "an upward departure may be warranted," apparently pursuant to Section 4A1.3 of the Guidelines, in view of Hewitt's past history of similar criminal conduct. In addition, the Addendum to the Presentence Report noted that the offender's history reflects "criminal livelihood," *see* Guidelines § 4B1.3, although the Addendum did not include a revised calculation reflecting an adjustment of the offense level pursuant to the criminal livelihood provision.

### The Sentence

Hewitt's recommended sentence of six months will be adjusted upward by 12 months, for a total sentence of 18 months imprisonment. The basis for the adjustment is an enhancement of the defendant's offense level to 11, pursuant to the "criminal livelihood" provision set forth at Section 4B1.3 of the Guidelines. The intersection of that offense level with a criminal history category of III produces a sentencing guideline range of 12 to 18 months. The maximum sentence within that range is warranted in view of the seriousness of Hewitt's offense and the likelihood of recidivism.

A further sentence enhancement to 24 months, requiring a criminal history category departure from the Guidelines under Section 4A1.3, has been considered, based upon Hewitt's past history of similar criminal conduct. Such a departure from the Guidelines has been rejected as inappropriate because the criminal history category departure would, in Hewitt's case, be predicated upon much of the same past criminal conduct that forms the justification for enhancement of his sentence under the criminal livelihood provision. Thus, tandem application of these provisions in this instance would unfairly penalize the defendant.

---

**2.** Federal law enforcement records indicate that defendant pleaded guilty and was sentenced to serve a thirty day term or alternatively to pay a $75 fine. New York State records apparently indicate that the charge was dismissed, for unstated reasons. Regardless of the disposition of the charge, the underlying conduct was, in part, the basis for Hewitt's parole violation warrant and subsequent imprisonment.

*The Criminal Livelihood Enhancement*

■ Section 4B1.3 of the Guidelines provides for sentence enhancements on grounds of criminal livelihood. When applicable, the provision requires that a defendant be assigned an offense level score level no lower than 13, or no lower than 11 in the event a two point deduction is available under Section 3E1.1, as it is in Hewitt's case, on grounds of the defendant's acceptance of responsibility for his offense. In the Addendum to the Presentence Report, the probation office has indicated that "the Criminal History in the report does reflect criminal livelihood." Application of that provision to Hewitt would result in a total offense level of 11, instead of the offense level of 4 assigned in the worksheet.

The criminal livelihood enhancement is appropriate where (a) the defendant committed an offense "as part of a pattern of criminal conduct" and (b) the defendant "derived a substantial portion of his income" from such criminal conduct. Guidelines § 4B1.3. The provision's rationale has its basis in "the moral assessment that those who take more from society are more culpable and the empirical assessment that those who derive substantial income from criminal activity are more likely to be recidivists." *U.S. v. Rivera,* 694 F.Supp. 1105, 1107 (S.D.N.Y.1988) (Leval, J.) (footnote omitted).

Application of the criminal livelihood provision to Hewitt is warranted. Without considering his arrest for possession of stolen credit cards in 1978,[3] the instant offense, considered together with his 1982 credit card-related conviction and his 1976 criminal conduct, which included possession and use of stolen credit cards and which resulted in his parole violation in 1977, amply demonstrates "a pattern of criminal conduct" occurring over a substantial period of time. The first element of the criminal livelihood provision therefore is satisfied.

The second "substantial income" element is also satisfied. That Hewitt derived a substantial portion of his income from his pattern of criminal conduct is clear from unrebutted information contained in the Presentence Report. The few jobs that Hewitt could recall, or verify, holding in recent years were "menial type jobs of short duration" that could not have been the source of much income. Nevertheless, the Report discloses that over the same period defendant maintained a luxury apartment in New Jersey with a monthly rental value of $1,300 to $1,400, drove two Mercedes Benz automobiles, possessed an expensive and elaborate wardrobe, and travelled extensively to Canada and Jamaica, using credit cards to finance his trips. The Presentence Report notes that his "high style of living" has been maintained for several years; the Secret Service estimates Hewitt is responsible for at least $50,000 in fraudulent credit card purchases in the recent past. This information reasonably demonstrates that a "substantial portion" of Hewitt's income has been derived from criminal endeavors and, as well, satisfies any requirement that such ill-gotten income be "sufficiently large in amount to be considered substantial." *Rivera,* 694 F.Supp. at 1106.

For the above reasons, application of the Section 4B1.3 enhancement of offense level to Hewitt is justified. By virtue of his repeated fraudulent dealings with credit cards, from which conduct he has derived a substantial income, Hewitt is a more culpable offender than ordinary worksheet calculations of offense level and criminal history category suggest. Hewitt's sentence must be enhanced within the Guidelines under the criminal livelihood provision to deter defendant from future credit card violations and to demonstrate to him the gravity of his current offense.

As noted, the escalation of Hewitt's offense level to 11 under the criminal livelihood provision produces a sentencing range of 12 to 18 months. The maximum sentence of 18 months imprisonment is imposed. In addition, defendant shall serve a

---

**3.** No disposition of that charge is noted in the Presentence Report. Under the Guidelines, "a prior arrest record itself shall not be considered...." Guidelines § 4A1.3 at 4.9.

3 year term of supervised release and pay a mandatory assessment of $50.00.

In view of Hewitt's pattern of past similar crimes, this sentence, although at the top of the Guideline sentencing range, may not be severe enough to dissuade him from continuing along his chosen course of fraudulent credit card activities. Whether or not the sentence has that deterrent effect, it should serve to instruct Hewitt that his reliance upon such continuing criminal activity as a means of livelihood is objectionable conduct that no longer will be so lightly countenanced as it was in the past.

*Departure from the Guidelines under Section 4A1.3*

■ The Presentence Report noted, and the Court has considered, the possibility of an upward departure from the Guideline sentencing range pursuant to Section 4A1.-3, in view of Hewitt's record of prior criminal conduct similar in nature to his current offense. As a general rule, the Guidelines permit departure from a sentencing range if circumstances exist of a kind or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the numerical measures of offense level and criminal history category. 18 U.S.C. § 3553(b) (Supp. V 1987). It has been held that departures involving prior criminal history are "primarily control[led]" by the policy statement set forth in Section 4A1.3 of the Guidelines. *United States v. Cervantes*, 878 F.2d 50, 52–53 (2d Cir.1989).

Departure from the Guidelines under that section appears on first examination to be justified in Hewitt's case, on grounds that the assigned criminal history category of III fails adequately to "reflect the seriousness of [Hewitt's] past criminal conduct or the likelihood that the defendant will commit other crimes." Guidelines § 4A1.3 at 4.8. The criminal history tabulation rules, Guidelines § 4A1.1, give Hewitt a total of only four criminal history points. Overlooked and unassessed by the tabulation rules is the fact that Hewitt, on three

separate occasions exclusive of the instant offense, had encounters with law enforcement officials during which he was found to be in possession of stolen or counterfeit credit cards.

The strong resemblance Hewitt's past criminal conduct bears to his present offense behavior is simply not a factor included within the criminal history calculus dictated by Section 4A1.1 of the Guidelines. The Sentencing Commission partially acknowledges this limitation, in observing that upward deviation from the criminal history calculus may be justified where reliable information discloses "prior similar adult criminal conduct not resulting in a criminal conviction." Guidelines § 4A1.3(e) at 4.9; *see also Cervantes*, at 55.

Prior similar criminal behavior may bear directly upon assessment of the "seriousness of a defendant's past criminal conduct" as well as "the likelihood that the defendant will commit other crimes" of a similar nature, Guidelines § 4A1.3 at 4.8, yet the criminal history calculus does not attempt in any way to gauge the similarity between past criminal behavior and present offense. Therefore, departure from the Guidelines may be warranted in certain cases presenting criminal histories of similar past conduct, because:

> [t]he recidivist's relapse into the same criminal behavior demonstrates his lack of recognition of the gravity of his original wrong, entails greater culpability for the offense with which he is currently charged, and suggests an increased likelihood that the offense will be repeated yet again. While the prior similar adult criminal conduct that has resulted in conviction may have already been counted under section 4A1.2(e)(1) or (2) when computing the criminal-history category, the similarity between the two offenses provides the district court with additional reason to enhance the sentence under section 4A1.3.

*U.S. v. De Luna–Trujillo*, 868 F.2d 122, 125 (5th Cir.1989) (Rubin, J.).[4]

---

4. The policy statement of the Sentencing Commission set forth at Section 4A1.3 of the Guidelines suggests that prior similar adult criminal conduct provides a basis for departure from the sentencing range only when such conduct has not resulted in a criminal conviction, Guidelines

In this case, however, Hewitt's repeated past involvement with stolen credit cards has already once been included as a relevant sentencing consideration, by virtue of the application of the criminal livelihood provision set forth at Section 4B1.3 of the Guidelines to his case. That provision, by requiring commission of an offense that fits within a "pattern of criminal conduct" occurring over a substantial period of time, directly focuses on the resemblance between a defendant's past criminal acts and his present offense. Thus, it substantially mirrors the ground for departure available under Section 4A1.3 predicated upon "prior similar adult criminal conduct." What is more, the sentencing justifications for offense level enhancement under Section 4B1.3 and enhancement of criminal history category under Section 4A1.3, in cases involving past similar conduct, are essentially the same. In both cases, the basis for upward adjustment is the assessment that such similar past conduct makes the defendant in question more culpable and more likely to recidivate. *Cf. Rivera*, 694 F.Supp. at 1107–08, with *De Luna–Trujillo*, 868 F.2d at 125.

Accordingly, a departure under Section 4A1.3 that is premised upon the similarity between Hewitt's past criminal conduct and his current offense, if invoked in tandem with the criminal livelihood enhancement of Section 4B1.3, would doubly punish defendant for the common nature of his criminal acts, and do so in furtherance of nearly identical sentencing principles. Such sentencing practices involving "double counting" are inappropriate and, in all likelihood, are unlawful. *See U.S. v. Cervantes*, 878 F.2d 50, 55 n. 3 (2d Cir.1989) (noting hypothetical instance of impermissible "double counting" to add points to criminal history calculus); *cf. Alessi v. Quinlan*, 711 F.2d 497, 500 & n. 3 (2d Cir.1983) (noting, without considering validity of, several Connecticut district courts holding that due process is violated by Parole Commission decisions that "confine a prisoner beyond the applicable guideline for the same reason used to select the prisoner's guideline in the first place").[5]

For these reasons, Hewitt's criminal history category of III has not been adjusted upward, despite the Court's conviction that Hewitt's present offense and past record, considered together, warrant a sentence in excess of the eighteen month term of imprisonment that results from application of Section 4B1.3 of the Guidelines. A departure in the direction of a sentence appropriate to a category IV criminal history defendant would, in Hewitt's case, support a sentence of up to 24 months if combined with the offense level of 11 that results

§ 4A1.3(e) at 4.9. *De Luna–Trujillo*, for the reasons stated above, holds that prior similar adult criminal conduct can support departure "whether or not it has resulted in conviction." *De Luna–Trujillo*, 868 F.2d at 125. Hewitt's past similar criminal conduct falls into both categories and so might serve as a ground for departure under either view. For reasons considered below, it is not necessary here to choose between the opposing positions.

**5.** Of course, the criminal livelihood provision requires not simply similar past criminal conduct, but similar past criminal conduct that has produced substantial financial rewards. The fact that certain additional information concerning the remunerative nature of the criminal conduct in question is required to satisfy that provision does not, however, dispel the double counting problem discussed above. It remains the case that the information that would have to be relied upon to justify departure from the guidelines on grounds of similar past conduct under Section 4A1.3 necessarily will already have been taken into account (together with monetary information) in making a determina-

tion within the Guidelines to elevate the defendant's offense level pursuant to Section 4B1.3. Given that the Sentencing Commission has expressly considered the "similarity" factor in devising a measure by which to adjust offense level *within* the Guidelines, the information establishing such similarity cannot reasonably be said to constitute a circumstance warranting *departure* from the Guidelines on the ground that information of such nature was not "adequately taken into consideration by the Sentencing Commission in formulating the guidelines...." 18 U.S.C. § 3553(b) (Supp. V 1987). *Cf. Cervantes*, at 53 (rejecting sentencing departure to the extent departure was premised upon a factor already within the purview of Guidelines); *U.S. v. Uca*, 867 F.2d 783 (3d Cir.1989) (departure based on activities clearly contemplated under Guidelines held unsustainable). That at least should be the rule in those situations, such as here, in which the defendant's conduct has satisfied the requirements of enhancement under Section 4A1.3.

from the criminal livelihood enhancement. Imposition of a sentence of that length might well serve to discourage Hewitt from resuming his pattern of criminal conduct and persuade him of the gravity of his crimes.

Nevertheless, in light of the Sentencing Commission's express consideration of the severity of remunerative patterns of criminal conduct under the criminal livelihood provision of the Guidelines set forth at Section 4B1.3, the Court is constrained from departing from the Guidelines to impose a sentence in excess of eighteen months. Under the sentencing framework dictated by the Guidelines, a departure under Section 4A1.3 would in these circumstances constitute impermissible "double counting" of criminal conduct.

Thus a sentence of 18 months imprisonment will be imposed subject to the hearing now set for August 7, 1989.

It is so ordered.