**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Arturo MUNSTER–RAMIREZ, aka David Otto Munster, Defendant–Appellant.**

**No. 88–5263.**

United States Court of Appeals, Ninth Circuit.

Submitted June 29, 1989.*

Decided Nov. 7, 1989.

---

* The panel finds this case appropriate for submission without oral argument pursuant to Ninth     Circuit Rule 34–4 and Fed.R.App.P. 34(a).

Grant Eddy, San Diego, Cal., for defendant-appellant.

Bruce R. Castetter, Asst. U.S. Atty., Chief, Appellate Section, Crim. Div., San Diego, Cal., for plaintiff-appellee.

Before ALARCON and NELSON, Circuit Judges, and ROSENBLATT,** District Judge.

ALARCON, Circuit Judge:

Arturo Munster–Ramirez appeals from the judgment of the district court entered after he pled guilty to transportation of an illegal alien under 8 U.S.C. § 1324(a)(1)(B) and commission of the offense of transportation of an illegal alien while on release from a previous indictment for transportation of illegal aliens under 18 U.S.C. § 3147. Munster–Ramirez had an offense level of 13 and a criminal history category of VI resulting in a sentencing range under the Sentencing Guidelines of 33 to 41 months for transportation of an illegal alien. The district court sentenced Munster–Ramirez to 33 months for transportation of an illegal alien. This sentence was to run consecutively to the sentence imposed in another criminal case against him involving transportation of illegal aliens. The district court also ordered a two-year period of supervised release after his term of imprisonment. Munster–Ramirez was given a one-year suspended sentence for violation of 18 U.S.C. § 3147. On appeal, he challenges only his sentence. He contends that (1) the Sentencing Guidelines are unconstitutional; (2) the district court erred in applying section 4B1.3, the criminal livelihood section, of the Sentencing Guidelines; and (3) the district court erred in denying him a two-point adjustment for acceptance of responsibility under the Sentencing Guidelines. We affirm.

I.

Munster–Ramirez challenges the constitutionality of the Sentencing Guidelines. His argument is foreclosed by the Supreme Court's decision in *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989).

II.

Munster–Ramirez contends that the district court erred in applying section 4B1.3, the criminal livelihood section, of the Sentencing Guidelines, because he "submitted substantial evidence of his employment in lawful activities, starting in 1969 and into the 1980's." Our review of a sentence determined by application of the Sentencing Guidelines is limited by statute. 18

** The Honorable Paul G. Rosenblatt, United States District Judge for the District of Arizona, sitting by designation.

U.S.C. § 3742 (1989 Supp.). Section 3742 provides in pertinent part:

(e) *Consideration.*—Upon review of the record, the court of appeals shall determine whether the sentence—

(1) was imposed in violation of law;

(2) was imposed as a result of an incorrect application of the sentencing guidelines; or

(3) is outside the range of the applicable sentencing guideline, and is unreasonable, having regard for—

(A) the factors to be considered in imposing a sentence, as set forth in Chapter 227 of this title; and

(B) the reasons for the imposition of the particular sentence, as stated by the district court pursuant to the provisions of section 3553(c); or

(4) was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable.

Pursuant to section 3742, after reviewing the record, we must determine whether the sentence was imposed as a result of an incorrect application of section 4B1.3 of the Sentencing Guidelines. 18 U.S.C. § 3742(e)(2). In making this determination, Congress has decreed that we

shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and shall give due deference to the district court's application of the guidelines to the facts.

18 U.S.C. § 3742.

Section 4B1.3 of the Sentencing Guidelines provides:

*Criminal Livelihood.*

If the defendant committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income, his offense level shall be not less than 13, unless § 3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than 11.

The commentary to section 4B1.3 provides:

*Application Note:*

1. "Pattern of criminal conduct" means planned criminal acts occurring over a substantial period of time. Such acts may involve a single course of conduct or independent offenses. This guideline is not intended to apply to minor offenses.

*Background:* Section 4B1.3 implements 28 U.S.C. § 994(i)(2), which directs the Commission to ensure that the guidelines specify a "substantial term of imprisonment" for a defendant who committed an offense as part of a pattern of criminal conduct from which he derived a substantial proportion of his income.

In determining whether the district court's finding that Munster–Ramirez "derived a substantial portion of his income" from criminal conduct was clearly erroneous, we must first determine what Congress meant by "a substantial portion of his income." *Cf. United States v. Rivera,* 694 F.Supp. 1105, 1106–1108 (S.D.N.Y.1988) (interpreting "a substantial portion of his income" in absolute terms); *United States v. Kerr,* 686 F.Supp. 1174, 1178 (W.D.Pa. 1988) (interpreting "a substantial portion of his income" in relative terms). This presents a legal question which we review independently and non-deferentially. *See Mada–Luna v. Fitzpatrick,* 813 F.2d 1006, 1011 (9th Cir.1987) (determinations of the scope of statutory requirements are reviewed *de novo* ).

The court in *Rivera* concluded that section 4B1.3 should be interpreted to apply "only when the defendant derives substantial income, defined in absolute terms, from criminal activity." 694 F.Supp. at 1106. "Under this interpretation, [section 4B1.3] would apply to offenders for whom the portion of their income derived from the pattern of criminal activity is sufficiently large in amount to be considered 'substantial.'" *Id.* The court in *Rivera* concluded that this interpretation was "most consonant with the purpose and legislative history of the guideline." *Id.* Specifically, the court found that to interpret section 4B1.3 in relative terms would conflict with certain policy statements contained in the Sentencing Reform Act, because the Act requires the guidelines to be neutral as to the socio-

economic status of offenders and the Act requires that the guidelines reflect the general inappropriateness of considering the employment record of the defendant. *Id.* at 1107 (citing 28 U.S.C. § 994(d) and (e)). The court also noted that a relative interpretation of section 4B1.3 might raise constitutional questions because indigent and wealthy defendants would receive different treatment. *Id.* at 1107.

The court in *Kerr* rejected a claim that section 4B1.3 discriminates against indigent persons in violation of the equal protection and due process principles contained in the fifth amendment. 686 F.Supp. at 1175. The court found that the focus of the statute is not indigency. The focus is on "a pattern of criminality" upon which an individual depends for his livelihood. *Id.* at 1180. In reaching its conclusion that section 4B1.3 passes constitutional muster, the court looked at the predecessors to section 4B1.3, the Dangerous Special Offender statutes, 18 U.S.C. § 3575(e)(2) (repealed 1984), and 21 U.S.C. § 849(e)(2) (repealed 1984). These statutes defined "a substantial source of income" as an amount which

> for any period of one year or more exceeds the minimum wage, determined on the basis of a forty-hour week and fifty-week year, ... under section 206(u)(1) of title 29 ... and which for the same period exceeds fifty percent of the defendant's declared adjusted gross income under section 62 of title 26.

21 U.S.C. § 849(e) (repealed 1984); *see also* 18 U.S.C. § 3575(e) (repealed 1984). The court adopted the definition in the Dangerous Special Offender Statutes "as definitive of the 'substantial portion' language" in section 4B1.3, because the court did "not detect any Congressional intent to alter this definition" and because the court found the "wise" purpose of the definition was to provide "an explicit, convenient, and objective measure of proof[.]" *Id.* at 1178.

In construing section 4B1.3 of the Sentencing Guidelines, we start by looking at the language of section 4B1.3 itself and the commentary to that section. *See United States v. Taylor,* 802 F.2d 1108, 1113 (9th Cir.1986), *cert. denied,* 479 U.S. 1094, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987) (discussing statutory interpretation). Second, we look at the legislative history of the Sentencing Guidelines and section 4B1.3. *Id.* Absent a clearly established legislative intent to the contrary, the plain meaning of the words used in a statute controls. *Id.*

■ We reject the *Rivera* Court's conclusion "that section 4B1.3 should be applied only when the defendant derives substantial income, defined in absolute terms, from criminal activity." The plain meaning of section 4B1.3 indicates that "a substantial portion of *his* income" must be defined in relative terms. To interpret this language in absolute terms, as the *Rivera* Court has, ignores the plain language of section 4B1.3. Moreover, such an interpretation ignores the commentary to section 4B1.3 which indicates that section 4B1.3 applies to "a defendant who committed an offense as part of a pattern of criminal conduct from which he derived a substantial *pro*portion of *his* income." (emphasis added). "*Pro*portion of *his* income" plainly means that the sentencing court must determine a defendant's income and then determine what percentage or proportion of his income is derived from criminal activity.

Furthermore, our review of the legislative history of section 4B1.3 does not reveal "a clearly established legislative intent to the contrary." The language of section 4B1.3 tracks the wording of 28 U.S.C. § 994(i)(2) which provides that, "(i) The commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which the defendant—(2) committed the offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income." The legislative history of 28 U.S.C. § 994(i)(2) indicates that section 4B1.3 is derived from the Dangerous Special Offender provisions of 18 U.S.C. § 3575(e) (repealed 1984) and 21 U.S.C. § 849(e) (repealed 1984). S.Rep. No. 225, 98th Cong., 2d Sess. 176, *reprinted in,* 1984 U.S.Code Cong. & Admin.News 3182, 3359. The only deviation from prior law which Congress notes is that, "rather than providing enhanced sentences above the

maximum sentence provided for any other similar offense, as is done in current 18 U.S.C. § 3575(b), section 994(i) requires that the guidelines insure a substantial sentence to (sic) imprisonment that is nevertheless within the range generally available for the offense." *Id.*

Although the *Rivera* Court is correct in stating that Congress expressed its intention that the sentencing guidelines and policy statements reflect the *"general* inappropriateness" of considering a defendant's employment record in sentencing, Congress in 28 U.S.C. § 994(d) stated that the Sentencing Commission could take a defendant's previous employment record into account to the extent that it does have relevance. In the context of the criminal livelihood provision, section 4B1.3, a defendant's employment record is relevant to determine whether a defendant's income is derived from criminal enterprise or legitimate means.

The legislative history of 28 U.S.C. § 994 reflects Congress' intent with respect to section 994(d) and (e). Congress explained the differences and the interplay between section 994(d) and (e) as follows:

Subsection (e) specifically requires that the Sentencing Commission insure that the sentencing guidelines and policy statements reflect the "general inappropriateness" of considering education, vocational skills, employment record, family ties and responsibilities, and community ties of the defendant in recommending a term of imprisonment or the length of a term of imprisonment. As discussed in connection with subsection (d), *each of these factors may play other roles in the sentencing decision;* they may, in an appropriate case, call for the use of a term of probation instead of imprisonment, if conditions of probation can be fashioned that will provide a needed program to the defendant and assure the safety of the community.

The purpose of the subsection is, of course, to guard against the inappropriate use of incarceration for those defendants who lack education, employment, and stabilizing ties. *It should be empha-*sized, however, that the Committee decided to describe these factors as "generally inappropriate," rather than always inappropriate, to the decision to impose a term of imprisonment or determine its length, in order to permit the Sentencing Commission to evaluate their relevance, and to give them application in particular situations found to warrant their consideration.* The Committee believes that it is important to encourage the Sentencing Commission to explore the relevancy to the purposes of sentencing of all kinds of factors, whether they are obviously pertinent or not; to subject those factors to intelligent and dispassionate professional analysis; and on this basis to recommend, with supporting reasons, the fairest and most effective guidelines it can devise. There are sufficient checks built into the system to avoid aberrations, and thus the guidance in this subsection is cautionary rather than proscriptive.

S.Rep. No. 225, 98th Cong., 2d Sess. 174–75, *reprinted in* 1984 U.S.Code Cong. & Admin.News at 3357–58 (emphasis added). Based on the plain language of section 4B1.3 and the lack of any contrary legislative intent, we conclude that Congress intended "a substantial portion of his income" to be interpreted in relative terms.

The *Rivera* Court's concern that defining substantial income in relative terms would result in the application of section 4B1.3 in several inappropriate situations is unfounded. *See Rivera,* 694 F.Supp. at 1107 (setting out some hypothetical cases in which section 4B1.3 would have to be applied). The commentary to section 4B1.3 indicates that, "this guideline is not intended to apply to minor offenses." A trial court, facing the hypothetical situations set out in *Rivera,* could reasonably determine that the defendant had engaged in minor offenses. Upon such a determination, section 4B1.3 would not apply. Thus, section 4B1.3 accords the trial court the discretion to determine when it should be applied.

■ Finally, we conclude that the interpretation of section 4B1.3 articulated by the *Rivera* Court would render section

4B1.3 vague and ambiguous. If section 4B1.3 only referred to substantial *income*, rather than to a substantial portion of a *defendant's* income, the application of section 4B1.3 would be totally subjective. Trial courts would have no guidance regarding what constitutes substantial income. A definition of substantial income in relative terms provides an objective measure of proof of substantial income. *See Kerr,* 686 F.Supp. at 1178 ("we find that the definition's purpose of providing an explicit, convenient, and objective measure of proof to be wise").[1]

■ Having determined Congress' intent with regard to section 4B1.3, we must next decide whether the district court's finding that Munster–Ramirez derived a substantial portion of his income from criminal conduct was clearly erroneous. The district court found that Munster–Ramirez derived a substantial portion of his income from criminal activity.

The record shows that Munster–Ramirez had been engaged in criminal conduct since 1970. He had numerous prior convictions for possession of controlled substances with intent to distribute, burglary, receiving stolen property, being an accessory to robbery, aiding and abetting illegal entry, and illegal transportation of aliens. At the time of the commission of the instant offense Munster–Ramirez was awaiting sentencing in another case for transportation of illegal aliens. Indeed, Munster–Ramirez had 22 criminal history points under the Sentencing Guidelines. This total was well over the 13 criminal history points necessary for him to fall into the criminal history category of VI, the highest criminal history category contained in the Sentencing Guidelines. The record establishes that Munster–Ramirez was engaged in a pattern of criminal conduct.

The record indicates that Munster–Ramirez was to be paid $300 for transporting the illegal alien in the instant matter. Munster–Ramirez admitted to the probation officer that he had transported illegal aliens on at least seven other occasions. The district court found that there was very little evidence establishing that Munster–Ramirez earned income from legitimate sources. The record shows that Munster–Ramirez worked for H & H Auto Wrecking for eleven days between August and October, 1985. A letter from Jose O. Rico indicated that Munster–Ramirez did some cement work in 1984. Munster–Ramirez's family submitted letters to the court stating that Munster–Ramirez "always worked." The family could not give dates when he worked. Munster–Ramirez advised his attorney that he had been employed at several places. However, there was no evidence in the record to corroborate his employment. Munster–Ramirez submitted copies of the telephone yellow pages to show that he advertised under the name "Auto's Thrifty Gardening Services" from 1969–1973. The district court discounted this evidence stating, "[t]hat doesn't show he's employed. It just shows he advertised for work." The district court asked whether Munster–Ramirez had tax returns to verify his claimed legitimate income. Counsel for Munster–Ramirez stated that, "[t]hose apparently don't exist." The record shows a pattern of criminal activity for profit and little or no income from legitimate employment. The district court's finding that Munster–Ramirez derived a substantial portion of his income from criminal conduct was not clearly erroneous.

*Acceptance of Responsibility*

■ Munster–Ramirez contends that the district court erred in denying him a two

1. Although we agree with the *Kerr* court that "a substantial portion of his income" must be defined in relative terms, we disagree with that court's conclusion that Congress intended the statutory definition of "substantial income" as defined in the repealed Dangerous Special Offender statutes to remain unchanged. *Kerr,* 686 F.Supp. at 1178; *see also* 18 U.S.C. § 3575(e) (repealed 1984); 21 U.S.C. § 849(e) (repealed 1984). If Congress had wanted the Commission to use that definition of substantial income, it would have said so. The definition in the Special Offender Statutes, however, is instructive. The failure of section 4B1.3 to define explicitly a substantial portion of a defendant's income gives the trial court discretion in making this determination. In exercising discretion, a trial court is free to look to the formula used in the repealed Special Offender statutes for guidance.

point downward adjustment for his acceptance of responsibility under section 3E1.1 of the Sentencing Guidelines. Section 3E1.1 provides:

*Acceptance of Responsibility*

(a) If the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct, reduce the offense level by 2 levels.

(b) A defendant may be given consideration under this section without regard to whether his conviction is based upon a guilty plea or a finding of guilt by the court or jury or the practical certainty of conviction at trial.

(c) A defendant who enters a guilty plea is not entitled to a sentencing reduction under this section as a matter of right.

The district court in explaining how it arrived at Munster–Ramirez's offense level declined to give a two-point adjustment under section 3E1.1 stating that although Munster–Ramirez admitted his involvement, "he put the responsibility off on his son." The district court further stated that if a two-point adjustment was given for acceptance of responsibility, the offense level would be 11 and with a criminal history category of VI the guideline range would be 27 to 33 months. The district court indicated that, "[i]f the court were going to sentence there, it would feel that his prior record would indicate that there should be justification to give him the maximum term of 33 [months]." The district court stated that without a two-point adjustment for acceptance of responsibility, with an offense level of 13 and a criminal history category of VI, the guideline range would be 33 to 41 months, "[s]o we end up with 33 months either way."

In *United States v. Turner*, 881 F.2d 684, 688–89 (9th Cir.1989), we held that:

[i]n a situation where the trial judge would have pronounced the same sentence whether a dispute as to the appropriate guideline range was resolved in favor of the defendant or the government, a determination of which precise guideline range is applicable is unnecessary because the defendant cannot demonstrate prejudice.

In the instant matter the district court expressly stated on the record that a sentence of 33 months would be imposed even if the facts demonstrated that the defendant was entitled to a two-point adjustment for acceptance of responsibility. Under these circumstances, resolution of the parties' dispute regarding acceptance of responsibility would be purely advisory. Therefore, we decline to review this issue.

## III.

### CONCLUSION

The record supports the district court's finding that Munster–Ramirez derived a substantial portion of *his* income from criminal conduct. Because of overlapping guideline ranges, the sentence of 33 months was consistent with the Sentencing Guidelines whether or not the district court correctly determined that Munster–Ramirez was not entitled to a two-point adjustment for acceptance of responsibility. Accordingly, we AFFIRM.

NELSON, Circuit Judge, dissenting:

I dissent because I do not believe that Mr. Munster–Ramirez's income from transporting illegal aliens across the United States border is high enough to qualify as a "substantial portion of his income" and therefore enhance his sentence under the United States Sentencing Guidelines. While I agree with the majority's conclusion that the standard for measuring "substantial portion of income" is a relative one, I believe that the legislative history of the provision requires that the income from the criminal conduct reach a minimum amount in order to qualify as "substantial" and enhance a defendant's sentence. The amount that Mr. Munster–Ramirez received from transporting illegal aliens does not meet that minimum amount. This interpretation is also consistent with the direction to the Sentencing Commission to draft sentences which do not discriminate on the basis of socioeconomic status.

I agree with the majority's conclusion that in calculating whether or not the defendant should be subjected to sentence enhancement, the income derived from criminal conduct must be measured against the defendant's total income. The guideline explicitly states "[i]f a defendant committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of *his* income, the offense level should not be less than **13**." United States Sentencing Commission, *Guidelines Manual* § 4B1.3 (hereafter *"Guidelines Manual"*) (emphasis added). This language tracks the language of the statute mandating the promulgation of the guidelines: "The Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which the defendant ... committed the offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income." 28 U.S.C. § 994(i). The guidelines seem to direct the sentencing judge to ask, "was the income from criminal conduct a substantial portion of this defendant's income?", and not "was the income from criminal conduct substantial in absolute terms?" However, the guidelines do not define "substantial portion" or provide any explanatory information beyond the text of the section itself.

The legislative history to the statute directing enhancement for criminal income describes the source of this provision. "[This category is] derived from the dangerous special offenders sentencing provisions now contained in 18 U.S.C. § 3575(e) and the dangerous special drug offender provisions of 21 U.S.C. § 849(e)". S.Rep. No. 225, 98th Cong., 2d Sess. 176, *reprinted in*, 1984 U.S.Code Cong. & Admin.News 3182,

3359. Since this portion of the sentencing guidelines is derived from an earlier sentencing enhancement scheme, examination of the earlier approach sheds important light on the Congressional conception of the current scheme.

The earlier dangerous special offenders provision and the dangerous special drug offenders provision contained sentence enhancement sections based on whether "a substantial portion of ... [the defendant's] income" was earned through the activities for which he or she was convicted. Both statutes defined "substantial portion of his income" as:

[A] source of income which for any period of one year or more exceeds the minimum wage, determined on the basis of a forty-hour week and fifty-week year, without reference to exceptions ... and which for the same period exceeds fifty percent of the declared adjusted gross income.

18 U.S.C. § 3575(e) (repealed in 1984); 21 U.S.C. § 849(e) (repealed in 1984). Since the current criminal income provision in the sentencing guidelines is derived from the earlier statutes and contains almost identical language, it follows that Congress carried over the definition of the key phrase, "substantial portion of his income", from the earlier provision to its replacement. If Congress had intended a different definition in the sentencing guidelines, it would either have employed a different term than the term used in the earlier statute or would have explicitly defined the term in a different manner.[1] Instead, Congress merely referred back to the earlier statute and stated that this section of the sentencing guidelines is derived from that earlier statute.[2]

1. The phrase in the earlier, dangerous special offenders statutes is "substantial source of his income". 18 U.S.C. § 3575(e) (repealed in 1984); 21 U.S.C. § 849(e) (repealed in 1984). The phrase used in the sentencing guidelines is "substantial portion of his income". *Guidelines Manual*, § 4B1.3. I see no significance in the change of the word "source" to "portion".

2. The majority opinion states that if Congress had intended the earlier definition of substantial income to carry over to the sentencing

guidelines, it would have included the definition in the statute. The majority opinion then goes on to conclude that the omission of *any* definition of substantial income in the *Guidelines Manual* means that the sentencing courts have discretion in defining the term and may choose the definition of the earlier statutes. However, one of the primary motivations behind implementation of federal sentencing guidelines was to remove much of the discretion involved in sentencing and to replace it with uniformity. *Guidelines Manual* at 1.2. Allowing discre-

I believe that sentencing courts should utilize this definition of substantial criminal income in applying the sentencing guidelines. As a result, the court should determine: (1) whether the income reached the level of a minimum wage salary, and (2) whether the income was at least fifty percent of the defendant's gross income. Thus I agree with the majority opinion's conclusion that the court must use a relative calculation, measuring the criminal income against the defendant's total income. I depart from the majority in that I believe that the income must at least reach the level of minimum wage in order to qualify as "substantial".

The United States Sentencing Commission was directed by statute to draft sentences which do not discriminate based on socioeconomic status. "The Commission shall assure that the guidelines and policy statements are entirely neutral as to race, sex, national origin, creed, and *socioeconomic status* of offenders." 28 U.S.C. § 994(d) (emphasis added). A purely relative measurement of criminal income leads to precisely the type of discriminatory effect prohibited by this section of the statute. For example, if an indigent defendant is convicted of transporting illegal aliens across the border and is found to have done this eight times charging ten dollars a trip, a court using a relative measurement of substantial income would have to conclude that for an impoverished man eighty dollars qualifies as a substantial portion of his income and therefore would have to enhance the defendant's sentence. However, if a defendant's socioeconomic status was anywhere above the poverty line, he or she would not have a sentence enhanced for earning eighty dollars transporting illegal aliens.

Utilizing a base level of income, such as minimum wage, before measuring the substantial portion of income minimizes the discriminatory effect of a purely relative

measurement and therefore reflects the congressional dictate to be neutral as to socioeconomic status. Clearly some sort of base level of income must be employed. Without a base, five dollars could qualify as substantial income to a defendant who had no income at all. Since sentencing courts must therefore use some sort of base, the amount which would provide the most uniformity and clarity is the amount used in the predecessor statute, minimum wage.

The majority opinion concludes that the utilization of a measure other than the relative measure would be vague and ambiguous. Adopting the definition articulated in the dangerous special offender statutes would avoid this problem of ambiguity. A sentencing court would first calculate whether the criminal income equaled an income based on minimum wage and then would determine whether the criminal income exceeded fifty percent of the defendant's total income. This test is clear, easily applied and, more importantly, balances the dual congressional mandates of penalizing those who make a living off of criminal conduct while not disproportionally penalizing those defendants who earn little or no income.

After applying this test to Mr. Munster–Ramirez, I conclude that he should not be subject to sentence enhancement under this provision. The record indicates that Mr. Munster–Ramirez was to be paid $300 for transporting illegal aliens in the commission of the offense for which he was convicted. In addition, he admitted to the probation office that he had transported aliens on other occasions. Therefore the sentencing court had evidence that Mr. Munster–Ramirez earned approximately $2,100.00 transporting illegal aliens across the border. This amount does not come close to equaling the minimum wage determined on the basis of a forty-hour week and a fifty-week year.[3]

tion in such a critical area as defining the term utilized in sentence enhancement could create widely disparate sentences. I believe that a more appropriate explanation for the Sentencing Commission's failure to define substantial income is that they felt that the definition already existed, in the earlier statute which served as a prototype for this provision.

**3.** The current minimum wage is $3.35 an hour. 29 U.S.C. § 206. Calculated over a forty-hour

In spite of the fact that Mr. Munster-Ramirez's income from transporting aliens across the border is greater than fifty percent of his total income, it is not high enough in itself to subject him to sentence enhancement. I dissent because I believe that this court should vacate Mr. Munster-Ramirez's sentence and remand this case to the district court for resentencing based on a sentence level which does not include enhancement due to criminal income.

week and a fifty-week year, the income based on minimum wage would be $6,700.