**UNITED STATES of America, Plaintiff–Appellee,**

**v.**

**William LUSTER, Defendant–Appellant.**

**No. 89–1277.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 6, 1989.

Decided Nov. 21, 1989.

1. In this case for example, when the EPA got around to acting on the appellant's proposed revised SIP it was disapproved.

Steven L. Hiyama, Asst. U.S. Atty. (argued), U.S. Attorney's Office, Detroit, Mich., for plaintiff-appellee.

Jill L. Price (argued), Federal Public Defenders Office, Detroit, Mich., for defendant-appellant.

Before MARTIN and MILBURN, Circuit Judges, and CONTIE, Senior Circuit Judge.

CONTIE, Senior Circuit Judge.

Defendant-appellant William Luster appeals the sentence imposed by the district court pursuant to the Federal Sentencing Guidelines (the guidelines), which were promulgated pursuant to the Sentencing Reform Act of 1984, as amended 18 U.S.C. § 3551 *et seq.* (1982 ed. Supp. IV) and 28 U.S.C. §§ 991–98 (1982 ed. Supp. IV). For the following reasons, we affirm the judgment of the district court.

I.

On April 29, 1988, defendant William Luster was arrested by Redship Township police officers for driving a stolen car and possessing narcotics paraphenalia. In a bag in the car were fourteen credit cards in the name of Ethel or Charles Russell. Defendant admitted to fraudulently applying for seven of the fourteen cards after taking Ethel Russell's purse, which contained the other half of the credit cards, during a robbery in September 1987. Defendant explained that he was a $100–a–day heroin addict and sold merchandise purchased with the credit cards to pay for drugs. During a three-month time period, defendant charged $8,223.58 in goods and services to the fraudulently obtained credit cards. An arrest warrant was issued on May 4, 1988.

After eluding arrest for one week, defendant turned himself in to the U.S. Secret Service. He was released on bond but failed to keep in contact with the Pretrial Services Agency or reside with his parents as required by the order for release. On May 26, 1988, the federal grand jury for the Eastern District of Michigan indicted defendant for credit card fraud in violation of 18 U.S.C. § 1029(a)(2). On August 17, 1988, after eluding authorities for three months, defendant was arrested.

On October 5, 1988, defendant pled guilty to the offense charged pursuant to a plea agreement in which the parties agreed to disagree on the applicability of two provisions of the federal sentencing guidelines. Prior to sentencing, defendant filed a Sentencing Memorandum with the court, urging the court to find that his actions warranted a two-level reduction for acceptance of responsibility under Guideline 3E1.1 and contending that the criminal livelihood adjustment, Guideline 4B1.3, was unconstitutional. After a hearing, defendant was sentenced to thirty months imprisonment. Defendant timely appeals.

II.

In the present case, defendant argues that the district court incorrectly applied the guidelines. Appellate review of sentences under the guidelines is set forth in 18 U.S.C. § 3742, which provides in relevant part:

> The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous.

Section 3E1.1 of the guidelines allows for a two-level reduction "if the defendant clearly demonstrates a recognition and affirmative acceptance of personal responsibility for his criminal conduct." Application Note Five to this guideline sets forth the standard of review for decisions made concerning this section: "The sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility. For this reason, the determination of the sentencing judge is entitled to great deference on review and should not be disturbed unless it is without foundation."

This court has recently adopted the "clearly erroneous" standard of review for a district court's acceptance of responsibility determination.

> Whether or not a defendant has accepted responsibility for his crime is a factual question. The district court's determination of that question, like its findings with respect to manager status, and minimal participant status, enjoys the protection of the 'clearly erroneous' standard. Because the trial court's assessment of a

defendant's contrition will depend heavily on credibility assesements, the 'clearly erroneous' standard will nearly always sustain the judgment of the district court in this area.

*United States v. Wilson,* 878 F.2d 921 (6th Cir.1989) (quoting *United States v. Thomas,* 870 F.2d 174, 176 (5th Cir.1989)).

Defendant argues that the sentencing court misapplied the guidelines by failing to give him a two-level reduction for his acceptance of responsibility, which was apparent from his guilty plea without extensive motion practice, affirmative statements of his guilt at the time of his bond hearing, and cooperation in the preparation of his Presentence Report.

The government argues that defendant does not deserve the reduction because throughout the summer of 1988 from the time the federal complaint was pending in May 1988 until his arrest on the indictment on August 17, 1988, defendant did what he could to deny responsibility for his conduct. He lied to the Pretrial Services Agency about where he lived and worked, carried false identification, failed to appear for his preliminary examination, and intentionally eluded federal authorities. It was not until defendant was arrested and involuntarily detained that he showed some signs of accepting responsibility for his conduct.

Application Note Three to Guideline 3E1.1 states: "A guilty plea may provide some evidence of the defendant's acceptance of responsibility. However, it does not, by itself, entitle a defendant to a reduced sentence under this section." Appropriate considerations in determining whether a defendant qualifies for provision 3E1.1 include, but are not limited to, the following:

(a) voluntary termination or withdrawal from criminal conduct or associations;

(b) voluntary payment of restitution prior to adjudication of guilt;

(c) voluntary and truthful admission to authorities of involvement in the offense and related conduct;

(d) voluntary surrender to authorities promptly after commission of the offense;

(e) voluntary assistance to authorities in the recovery of the fruits and instrumentalities of the offense;

(f) voluntary resignation from the office or position held during the commission of the offense; and

(g) the timeliness of the defendant's conduct in manifesting the acceptance of responsibility.

We find that although defendant eventually pled guilty, his actions prior to apprehension by the police do not demonstrate an acceptance of responsibility. Defendant did not voluntarily terminate or withdraw from criminal conduct (Guideline 3E1.1, Application Note 1(a)), or voluntarily and promptly surrender to authorities (Application Note 1(d)). Both the U.S. Secret Service and U.S. Marshals Service devoted substantial resources to the effort to locate and apprehend defendant. When he was arrested, defendant denied for over half an hour that he was William Luster. The lack of timeliness of defendant's acceptance of responsibility (Application Note 1(g)) weighs against the availability of a reduction for defendant.

Given these facts relied on by the district court, we believe its determination of the acceptance of responsibility issue is not clearly erroneous or without foundation and, therefore, it will not be disturbed.

## III.

Defendant next argues that the criminal livelihood section of the sentencing guidelines is an unconstitutional violation of the equal protection clause.

The Criminal Livelihood Guideline, Section 4B1.3, provides:

> If the defendant committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income, his offense level shall be not less than 13, unless § 3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than 11.

Appellant argues that the Criminal Livelihood Guideline violates the equal protection clause because it is applied only when

a substantial portion of a defendant's income is derived from a pattern of criminal activity. Because the guideline provides for a more severe punishment based on a percentage of income, an indigent defendant would receive a more severe sentence for $5000 worth of credit card fraud than would a defendant who earned, for example, $25,000.

The guidelines and Sentencing Reform Act of 1984 do not define the phrase "a substantial portion of his income." The legislative history of the Sentencing Reform Act states that Congress derived the category found in the criminal livelihood provision from the dangerous special offender provisions of 18 U.S.C. § 3575(e) and dangerous special drug offender provisions of 21 U.S.C. § 849(e). S.Rep. No. 225, 98th Cong., 1st Sess. 176, *reprinted in* 1984 U.S.Code Cong. & Admin.News, 3182, 3359. These statutes define a dangerous special offender as a defendant who committed a felony as part of a pattern of criminal conduct, "which constituted a substantial source of his income." A "substantial source" is an amount which exceeds the yearly minimum wage under the Fair Labor Standards Act, 29 U.S.C. § 206(a)(1) (approximately $6,700), and which exceeds half of the defendant's declared adjusted gross income. 18 U.S.C. § 3575(e); 21 U.S.C. § 849(e). The government urges that we adopt this definition as the district court for the Western District of Pennsylvania did in *United States v. Kerr*, 686 F.Supp. 1174 (W.D.Pa.1988). The court stated:

> Since we do not detect any Congressional intent to alter this definition and since we find that the definition's purpose of providing an explicit, convenient, and objective measure of proof to be wise, we adopt it as definitive of the "substantial portion" language within the guidelines.

*Id.* at 1178.[1]

The *Kerr* court conceded that under this definition the Criminal Livelihood provision discriminates on the basis of wealth, but, nevertheless, upheld the constitutionality of the guideline. The *Kerr* court found that although poverty is not a suspect class, *Harris v. McRae,* 448 U.S. 297, 100 S.Ct. 2671, 65 L.Ed.2d 784 (1980), the Supreme Court has applied a more demanding level of review than requiring a mere rational relationship to laws that disadvantage the indigent within the criminal justice system. *Mather v. Roe,* 432 U.S. 464, 471 n. 6, 97 S.Ct. 2376, 2381 n. 6, 53 L.Ed.2d 484 (1977); *Williams v. Illinois,* 399 U.S. 235, 263, 90 S.Ct. 2018, 2033, 26 L.Ed.2d 586 (1970). In *Bearden v. Georgia,* 461 U.S. 660, 666 n. 8, 103 S.Ct. 2064, 2069 n. 8, 76 L.Ed.2d 221 (1983), the Supreme Court stated that the ultimate question "is whether consideration of a defendant's financial background in setting or resetting a sentence is so arbitrary or unfair as to be a denial of due process." However, in *Bearden,* the Court also emphasized that a sentencing court could legitimately consider a defendant's employment history and financial resources in setting a sentence. *Id.* at 670, 103 S.Ct. at 2071.

The *Kerr* court concluded that the objective of the Criminal Livelihood provision is to impose an enhanced punishment in order to incapacitate professional criminals, and that if an offender makes a living from crime, then criminality is likely to continue.

> Thus, indigency is not the sole justification for the harsh treatment of offenders ... under the guidelines. Rather, their pattern of criminality, a pattern upon which they depend for their livelihood, demonstrates a need for their incapacitation.
>
> The requirement that they derive a substantial portion of their income from this pattern furthers the legitimate purpose of incapacitating professional criminals. Congress rationally may conclude that a person who depends upon criminality for a living and has no other vocation is more likely to continue his criminal ways than one for whom crime is an avocation. *See United States v. Carbone,* 793 F.2d

1. The Eighth Circuit recently held that the definition given in the dangerous special offender statutes should apply to the provision on the Criminal Livelihood guideline. *United States v. Nolder,* 887 F.2d 140 (8th Cir.1989).

559, 563 (3d Cir.1986) (Garth, Jr., dissenting) (Under the Bail Reform Act, "evidence of legitimate employment might bear upon [the defendant's] ability to earn a living apart from drug dealing"). The defendant who has an income to which crime does not contribute a substantial portion does not depend on crime; his prospects for returning to a legitimate lifestyle may be better.

686 F.Supp. at 1180. Because the Criminal Livelihood provision's wealth-based distinction furthered a valid government objective, the *Kerr* court found it to be constitutional. *Id.* at 1181.

Defendant Luster argues that the Sentencing Reform Act of 1984 requires that "the guidelines and policy statements [be] entirely neutral as to the race, sex, national origin, creed, *and socio-economic status* of offenders." 28 U.S.C. § 994(d) (emphasis added). It would be contrary to this provision to require a term of imprisonment for an indigent defendant who derives a small income, but a substantial portion of his total income, from a pattern of criminal conduct without mandating similar treatment for the wealthy defendant who derived substantial income from criminal activity. Defendant Luster urges the adoption of the definition of "substantial portion of his income" developed by the district court for the Southern District of New York in *United States v. Rivera,* 694 F.Supp. 1105 (S.D.N.Y.1988) in order to avoid this anomaly.

The *Rivera* court avoided the constitutional issue by defining "substantial portion of his income" as "sufficiently large in amount to be considered 'substantial.'" The court stated:

The guideline admits of at least two possible meanings. The statutory language "substantial portion of his income" can be interpreted in relative terms to provide a sentence enhancement (and a mandatory prison term) whenever the income received from a pattern of criminal activity constitutes a substantial percentage of the defendant's annual income....

Alternatively, however, the guideline can be construed to require an enhanced sentence only for those offenders who receive a "substantial" income from a pattern of criminal activity. Under this interpretation, the guideline would apply to offenders for whom the portion of their income derived from the pattern of criminal activity is sufficiently large in amount to be considered "substantial."

I conclude that the latter interpretation is correct and that § 4B1.3 should be applied only when the defendant derives substantial income, defined in absolute terms, from criminal activity.

*Id.* at 1106. The *Rivera* court found that the guideline's omission of the specific monetary amount found in the dangerous special offender statutes indicated that "the 'substantial portion' of income to which the guideline refers is not to be measured according to a rigid statutory formula, but rather is to be developed on a case-by-case basis." *Id.* at 1108. The court held that a statutory formula should not be applied because the percentage of a person's income that is derived from criminal conduct is not a good indicator of propensity to criminality. *Id.* at 1107.

In an effort to resolve the ambiguity created by the "substantial portion" language of the guideline and to provide a better definition of its intended scope, the U.S. Sentencing Commission has approved an amendment which becomes effective on November 1, 1989.[2] Under the proposal, Guideline 4B1.3 is amended by deleting "from which he derived a substantial portion of his income" and inserting in lieu thereof "engaged in as a livelihood." The section reads as follows: "If the defendant committed an offense as part of a pattern of criminal conduct engaged in as a livelihood, his offense level shall not be less than 13...." An additional note defines "engaged in as a livelihood."

2. The Commentary to the proposed amendment indicates that one reason for the amendment is to resolve the conflict between *Kerr* and *Rivera.*

2. 'Engaged in as a livelihood' means that (1) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law (currently 2,000 X the hourly minimum wage under Federal law is $6,700); and (2) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (e.g., the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for his criminal conduct).

54 Fed.Reg. 21,348.01 (1989). The Commentary states, "The first prong of the proposed definition in Application Note 2 above is derived from former 18 U.S.C. 3575, the provision from which the statutory instruction underlying this guideline (28 U.S.C. 994(i)(2)) was itself derived."

The proposed amendment shifts the focus of the inquiry under the Criminal Livelihood Guideline from the amount of money derived from criminal activity (as long as it is over $6,700) to the degree to which criminal conduct was defendant's primary occupation. The second prong of former 18 U.S.C. § 3575, which specified that a substantial source of income is one which "exceeds half of the defendant's declared adjusted gross income," was specifically not adopted, indicating the Commission's intention to reject a percentage formula based on wealth. Moreover, the proposed amendment substitutes the word "portion" for "proportion" in the background statement for the guideline which states:

*Background:* Section 4B1.3 implements 28 U.S.C. § 994(i)(2), which directs the Commission to ensure that the guidelines specify a "substantial term of imprisonment" for a defendant who committed an offense as part of a pattern of criminal conduct from which he derived a substantial proportion of his income.

█ Inasmuch as the amendment to the guideline is intended to clarify the existing guideline, it should be given substantial weight in determining the meaning of the existing guideline. *United States v. Ofchinick,* 877 F.2d 251, 257 n. 9 (3d Cir.1989). *See also Barnes v. Cohen,* 749 F.2d 1009, 1015 (3d Cir.1984), *cert. denied,* 471 U.S. 1061, 105 S.Ct. 2126, 85 L.Ed.2d 490 (1985). The amendment indicates that the objective of Sentencing Guideline 4B1.3 is to prevent recidivism by imposing heavier penalties on professional criminals, those who derive a substantial portion of their income from criminality because they depend on criminal conduct as a livelihood. An increased penalty is imposed because the defendant has chosen crime as a livelihood, not because the defendant is indigent. A determination of whether a pattern of criminal activity provides "a substantial portion" of one's income is a means of determining whether or not criminal conduct is one's primary occupation. Interpreted in this way, the guideline does not create a wealth-based classification even though its impact may fall more heavily on indigents.

Defendant argues that the Supreme Court's opinion in *Bearden* indicates that the Criminal Livelihood Guideline is unconstitutional because it mandates an enhanced sentence and precludes the possibility of probation based on financial status alone. *Bearden* did reject the argument that an indigent defendant should be incarcerated simply because his poverty may make him more likely to turn to crime as a source of income. 461 U.S. at 671, 103 S.Ct. at 2072. However, the *Bearden* court does not say that financial status can never be considered.

The Supreme Court in *Bearden* held:

The State, of course, has a fundamental interest in appropriately punishing persons—rich and poor—who violate its criminal laws. A defendant's poverty in no way immunizes him from punishment. Thus, when determining initially whether the State's penological interests require imposition of a term of imprisonment, *the sentencing court can consider the entire background of the defendant, including his employment history and financial resources.* As we said in *Williams v. Illinois,* "[a]fter having taken into consideration the wide range of

factors underlying the exercise of his sentencing function, nothing we hold precludes a judge from imposing on an indigent, as on any defendant, the maximum penalty prescribed by law."

461 U.S. at 669–70, 103 S.Ct. at 2071 (emphasis added) (citations omitted).

Employment history and financial resources are thus legitimate areas of inquiry under Guideline 4B1.3. The Criminal Livelihood Guideline is not based on financial status alone, but upon a pattern of criminal conduct from which a defendant derives a substantial portion of his income, which is indicative that criminal activity is defendant's primary source of livelihood. The fact that the guideline may have a greater impact on indigents, who do not have any means of livelihood other than crime, is an incidental effect of the statute's objective to prevent recidivism by imposing heavier penalties on professional criminals who make their living from crime.

We agree with the *Kerr* court that legislation which has a disparate impact on the indigent defendant should be subject to a more searching scrutiny than requiring a mere rational relationship. As the court stated:

> The Supreme Court has been more demanding of laws that disadvantage the indigent within the criminal justice system. At stake here is not mere economic or social welfare regulations but deprivation of a man's liberty. The courts "will squint hard at any legislation that deprives an individual of his liberty—his right to remain free." *Williams v. Illinois,* 399 U.S. 235, 263, 90 S.Ct. 2018, 2033, 26 L.Ed.2d 586 (1970) (Harlan, J., concurring).

686 F.Supp. at 1178 (citation omitted). We also agree with the *Kerr* court that the use of a defendant's financial background made by the Criminal Livelihood provision serves a valid government purpose. As the *Kerr* court stated:

> When viewed in the context of a pattern of criminality, the lack of employment and of legitimately obtained financial resources does indicate that the defendant is likely to commit further crimes, and the deprivation of liberty may be based upon it. *See United States v. Suppa,* 799 F.2d 115, 120 (3d Cir.1986) (employment history bears on finding of dangerousness under the Bail Reform Act).

686 F.Supp. at 1180.

Finally, we agree with the *Kerr* court that "Congress rationally may conclude that a person who depends upon criminality for a living and has no other vocation is more likely to continue his criminal ways than one for whom crime is an avocation." *Id.* We do not find that under the Criminal Livelihood Guideline the consideration of a defendant's financial background in setting a sentence "is so arbitrary or unfair as to be a denial of due process." *Bearden,* 461 U.S. at 666 n. 8, 103 S.Ct. at 2069 n. 8. Therefore, we reject defendant's constitutional argument and hold that Sentencing Guideline 4B1.3 does not violate due process or the equal protection clause.

## IV.

Defendant finally argues that even if the criminal livelihood adjustment in Guideline 4B1.3 passes constitutional muster, it was erroneously applied in his case.

### A.

Guideline 4B1.3 states in part:

> If the defendant committed an offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income, his offense level shall be not less than 13....

The Commentary in Application Note 1 states:

> "Pattern of criminal conduct" means planned criminal acts occurring over a substantial period of time. Such acts may involve a single course of conduct or independent offenses. This guideline is not intended to apply to minor offenses.

Defendant argues that the district court erred in ruling that his conviction for credit card fraud was "part of a pattern of criminal conduct" because the court included in

its analysis defendant's prior criminal history. Defendant contends that under the guideline only the offense charged can be considered, and it was, therefore, improper for the district court to consider defendant's prior offenses which included the following convictions: (1) in 1970, a conviction for attempted armed robbery; (2) in 1977, a conviction for possession of heroin; (3) in 1979, a conviction for selling heroin; (4), in 1987, a conviction for larceny in a building. Also at the time of sentencing, there was a pending charge of larceny in a building in Dearborn, Michigan.

We find defendant's argument to be without merit. Application Note 1 to Guideline 4B1.3 states that a pattern "may involve a single course of conduct or *independent offenses*" (emphasis added). The plain language of the guideline—"pattern of criminal conduct"—indicates that criminal conduct in addition to the offense in question is to be taken into consideration. In light of defendant's prior criminal record, the district court's ruling that the credit card fraud was "part of a pattern of criminal conduct" was not clearly erroneous and should be affirmed.

B.

Defendant also challenged the district court's conclusion that he "derived a substantial portion of his income" from a pattern of criminal conduct. Defendant argues that he is not the type of professional criminal whom Congress intended to include in the criminal livelihood section of the guideline because he repeatedly sought work in an attempt to support himself and the amount of money he derived from criminal conduct was not substantial.

Prior to 1988 defendant alleges that he held various part-time jobs such as parking cars for a local country club, working as a hair stylist and helping his brother with his business of transporting bodies for local funeral homes. However, the only documentation submitted to the court showed that defendant made a total of $500 parking cars at a country club in July and August 1987. The court found that defendant was not able to establish that he had earned the minimum wage or that he had paid income taxes on legitimate income. In contrast, in a three-month credit card spree in early 1988, defendant fraudulently obtained $8,223.58 worth of goods and services.

Whether or not a defendant derived "a substantial portion of his income" from a pattern of criminal conduct is a factual question subject to the "clearly erroneous" standard of review set out in 18 U.S.C. § 3742(e). Based on the above evidence, the district court's conclusion that defendant derived a substantial portion of his income from criminal conduct, rather than from regular, legitimate employment, was not clearly erroneous and will not be disturbed.

For the reasons set forth above, the sentence imposed by the district court is affirmed.