**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Michael Angelo IRVIN,
Defendant–Appellant.**

No. 89–3263.

United States Court of Appeals,
Tenth Circuit.

June 26, 1990.

Charles D. Anderson, Federal Public Defender, and Michael L. Harris, Asst. Federal Public Defender, D. Kansas, Kansas City, Kan., for defendant-appellant.

Benjamin L. Burgess, Jr., U.S. Atty., and Julie A. Robinson, Asst. U.S. Atty., D. Kansas, Kansas City, Kan., for plaintiff-appellee.

Before McKAY and BALDOCK, Circuit Judges, and COOK,* Chief District Judge.

McKAY, Circuit Judge.

This case involves a challenge to the district court's application of section 4B1.3 of the United States Sentencing Guidelines.

## I. Facts

From approximately May 1, 1988 to October 14, 1988, defendant used fraudulently obtained credit cards to acquire $4,894.72 worth of goods. On June 19, 1989, defendant entered a plea of guilty to mail fraud in violation of 18 U.S.C. § 1341, pursuant to a plea bargain with the government. In arriving at a sentence for defendant, the district court applied section 4B1.3 of the Sentencing Guidelines—the criminal livelihood enhancement—to increase defendant's offense level from eight to eleven. The sentencing range for defendant at an offense level of eight would have been two to eight months. *See* United States Sentencing Commission, *Guidelines Manual*, Ch. 5, Part A (Nov. 1989). Instead, defendant was sentenced to a term of nine months. Nine months is within the sentencing range of eight to fourteen months for an offense level of eleven. *See id.* Defendant now appeals the district court's application of section 4B1.3 to enhance his sentence.

---

* Honorable H. Dale Cook, Chief Judge, United States District Court for the Eastern, Northern and Western Districts of Oklahoma, sitting by designation.

## II. Standard of Review

■ Pure questions of interpretation of the sentencing guidelines, which are closely analogous to questions of statutory interpretation, are questions of law. *United States v. Smith,* 900 F.2d 1442 (10th Cir. 1990) (WESTLAW; Federal Library). *Cf. North American Coal Corp. v. Director, O.W.C.P.,* 854 F.2d 386, 388 (10th Cir.1988); *Sage v. Automation, Inc. Pension Plan and Trust,* 845 F.2d 885, 890 (10th Cir. 1988). We review questions of law *de novo.* *De novo* review requires us to make an independent determination of the issues, similar to that which the trial court makes in its initial ruling. *See United States v. Ortiz,* 804 F.2d 1161, 1164 (10th Cir.1986).

## III. Sentencing Guidelines Section 4B1.3

The language of section 4B1.3 in effect when defendant was sentenced [1] was:

> If the defendant committed an offense as a part of a pattern of criminal conduct from which he derived a substantial portion of his income, his offense level shall not be less than 13, unless § 3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than 11.

U.S.S.G. § 4B1.3 (Oct.1988). Defendant claims that the district court erred in applying this section to defendant for two reasons. First, defendant claims that the language in section 4B1.3, "pattern of criminal conduct," requires criminal activity for a longer period of time than that which took place during his offense. Second, defendant claims that the language in section 4B1.3, "substantial portion of his income," requires a defendant to have made a substantial amount of income, regardless of source. Defendant claims that a total of $4,894.72 is not a substantial portion.

### A. "A Pattern of Criminal Conduct"

■ The application notes accompanying section 4B1.3 define "pattern of criminal conduct" as: "planned criminal acts occurring over a substantial period of time.

Such acts may involve a single course of conduct or independent offenses." U.S. S.G. § 4B1.3, comment. (n. 1) (Oct.1988). We interpret the phrase "a substantial period of time" in this application note to require more than a short, quick, one-time offense. In this case, defendant engaged in fraudulent use of credit cards from at least May 17, 1988 to October 14, 1988—a period of almost five months. In addition, defendant rented the post office box with which he fraudulently obtained the credit cards on March 23, 1988. If the time period is counted from March 23, 1988, then defendant engaged in criminal acts for almost seven months.

The government inferentially claims that *United States v. Luster,* 889 F.2d 1523, 1530–31 (6th Cir.1989), stands for the proposition that criminal conduct for five to seven months fits within the language of section 4B1.3. However, the *Luster* court actually relied on several offenses that occurred years before the charged offense to find a pattern of criminal conduct. *See Luster,* 889 F.2d at 1531. A more analogous case is *United States v. Hearrin,* 892 F.2d 756 (8th Cir.1990). The *Hearrin* court held that a well-organized effort to commit mail fraud over an eight-month period was criminal conduct occurring over a substantial period of time. *See Hearrin,* 892 F.2d at 760.

We hold that defendant's well-organized criminal venture continuing for a period of approximately five to seven months also fits within the definition of a pattern of criminal conduct. The application note to section 4B1.3 explains that a pattern of criminal conduct may involve only a single course of conduct. We believe that criminal conduct extending for a period of five to seven months is criminal conduct occurring over a substantial period of time. Thus, we uphold the district court's application of section 4B1.3 to defendant.

### B. "A Substantial Portion of His Income"

The language in section 4B1.3, "substantial portion of his income," has been inter-

---

1. Section 4B1.3 was substantially amended in November 1989. *See* U.S.S.G. § 4B1.3 (Nov. 1989).

preted by several federal courts. Unfortunately, their interpretations have not been uniform. Three courts have held that the plain language of section 4B1.3 does not require an individual convicted of criminal conduct to earn a substantial amount of money from his criminal acts. Instead, these courts hold that the language simply requires a convicted individual to earn a substantial portion of his income, however meager, from criminal acts. *See United States v. Munster–Ramirez*, 888 F.2d 1267, 1270 (9th Cir.1989); *United States v. Luster*, 889 F.2d 1523, 1527–30 (6th Cir.1989); *United States v. Kerr*, 686 F.Supp. 1174, 1178 (W.D.Pa.1988).

Another three federal courts have reached exactly the opposite conclusion regarding the language of section 4B1.3. These courts hold that the language of section 4B1.3 requires an individual convicted of criminal conduct to not only earn a substantial portion of his overall income from the criminal acts, but that he must also make a substantial amount of income defined in absolute terms. *See United States v. Cianscewski*, 894 F.2d 74, 77–78 (3d Cir.1990); *United States v. Nolder*, 887 F.2d 140, 142 (8th Cir.1989); *United States v. Rivera*, 694 F.Supp. 1105, 1108 (S.D.N.Y. 1988).

Although we find the language of section 4B1.3 unclear, we are willing to concede that one logical interpretation of the word "portion," in context, would merely require a substantial portion of a convicted individual's total, regardless of amount, to arise from criminal activities. Under this interpretation, an individual who makes a large percentage of a very small income from criminal conduct would still be subject to enhancement under section 4B1.3. However, we are not willing to ascribe such an intention to the Sentencing Commission for essentially four reasons.

■ First, section 4B1.3 was amended in November 1989 to include a minimum criminal income requirement.

> If the defendant committed an offense as part of a pattern of criminal conduct engaged in as a livelihood, his offense level shall be not less than 13, unless

> § 3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than 11.

U.S.S.G. § 4B1.3 (Nov.1989). The current application notes define the new term "engaged in as a livelihood" to mean that "[t]he defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law (currently 2000 × the hourly minimum wage under Federal law is $6,700)...." U.S.S.G. § 4B1.3, comment. (n.2) (Nov.1989). To the extent that this amendment can be read to clarify, rather than alter, "we may give it substantial weight in determining the meaning of the existing guideline." *United States v. Ofchinick*, 877 F.2d 251, 257 n. 9 (3d Cir. 1989). We believe that the amendment is merely a clarification.

Second, 28 U.S.C. § 994(d) requires the Commission to assure that the guidelines are "entirely neutral as to the race, sex, national origin, creed, and socioeconomic status of offenders." 28 U.S.C. § 994(d) (Supp. IV 1986). If there were no minimum income threshold in section 4B1.3, then wealthy individuals with large amounts of legitimate income would not be subject to the enhancement provision for engaging in the same criminal conduct as poor individuals who have no other source of income and are thus subject to enhancement. Clearly such a rule would violate the Commission's mandate from section 994(d) to see that the Guidelines are neutral as to socioeconomic status. We recognize that a minimum income threshold does not solve the problem entirely. However, it alleviates at least part of the difficulty. Truly impecunious individuals will not be punished more harshly than those only slightly more wealthy. We cannot infer that the Commission intended to violate section 994(d) by creating section 4B1.3.

Third, the legislative history of the criminal livelihood enhancement provision indicates that its language was adopted from the Dangerous Special Offender statute located at 18 U.S.C. § 3575(e)(2), and 21 U.S.C. § 849(e)(2). *See* S.Rep. No. 98–225,

**1428**

98th Cong., 1st Sess. 175–76, *reprinted in* 1984 U.S.Code Cong. & Admin.News 3182, 3359.[2] These statutes define "substantial source of income" as an amount which exceeds the yearly minimum wage. *See* 18 U.S.C. § 3575(e)(2) (1982) (repealed 1984); 21 U.S.C. § 849(e)(2) (1982) (repealed 1984). While the Sentencing Commission's adoption of the words contained in the Special Offender statute does not necessarily mean that the precise definition of those words was also adopted, we believe that absent evidence to the contrary a strong inference can be maintained that the Commission adopted the existing definition with the words. We believe that the Commission's use of the exact language of Congress indicates an intent to adopt Congress' existing definition.

Finally, the older version of section 4B1.3 was followed by an application note which contained an implied absolute threshold requirement. "This guideline is not intended to apply to minor offenses." U.S.S.G. § 4B1.3, comment. (n.1) (Oct.1988). This note indicates that the Commission did not intend the criminal livelihood enhancement provision to apply to criminal offenses involving small amounts.

Based on these four independent reasons, we hold that the October 1988 version of section 4B1.3 of the Sentencing Guidelines applies only to cases in which the criminal conduct meets a threshold level of income.[3] The current version of section 4B1.3 and the special offender statute require at least $6,700 in criminal income. We adopt $6,700 as a floor in these cases. Since defendant in this case had a criminal income of only $4,894.72, we hold that the district court erroneously applied the section 4B1.3 enhancement to his sentence. We reverse defendant's sentence and remand for resentencing consistent with this opinion.

### IV. Conclusion

We AFFIRM the district court's interpretation of sentencing guideline 4B1.3 concluding that five to seven months of criminal activity fulfills the requirement of a pattern of criminal conduct. We REVERSE the district court's interpretation of the "substantial portion of his income" language in section 4B1.3. We hold that the district court erred in applying section 4B1.3 to a defendant who had a total income of only $4,894.72. Therefore, we REVERSE defendant's sentence and REMAND to the district court for resentencing consistent with this opinion.

**2.** In fact, Congress used the same language when it passed the statute authorizing promulgation of the Guidelines. "The Commission shall assure that the guidelines specify a sentence to a substantial term of imprisonment for categories of defendants in which the defendant ... (2) committed the offense as part of a pattern of criminal conduct from which he derived a substantial portion of his income." 28 U.S.C. § 994(i) (Supp. IV 1986).

**3.** We note that our decision on this issue will have little precedential importance since the Commission's 1989 amendments clarify the former ambiguity.