59 F.3d 171
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 UNITED STATES of America, Plaintiff-Appellee,
v.
Robert HOMRICH, et al., Defendants-Appellants.
 Nos. 94-1220, 94-1284.
 United States Court of Appeals, Sixth Circuit.
 June 30, 1995.
 
 Before: MERRITT, LIVELY and KEITH, Circuit Judges.
 PER CURIAM:
 
 
 1
 Defendants-Appellants Robert Homrich ("Homrich") and Juan Reyes ("Reyes," collectively "Defendants") appeal their convictions and sentences from the United States District Court for the Western District of Michigan, Southern Division. For the reasons stated below, we AFFIRM both convictions and sentences.
 
 I. Statement of the Case
 
 2
 Homrich and Reyes were charged, along with six other defendants, in Count One of a six count, second superseding indictment with conspiring together and with others to distribute and possess with intent to distribute marijuana, cocaine, heroin and other controlled substances between some time in 1985 and February 10, 1993 in violation of 21 U.S.C. Secs. 841 and 846. Reyes was charged in Count Two of the six count, second superseding indictment with money laundering along with two other defendants. While Defendants-Appellants opted for a jury trial, the remaining six defendants pled guilty to the various counts in the second superseding indictment.
 
 
 3
 On August 12, 1993, Homrich moved to sever his trial. On September 14, 1993, the district court denied that motion, without prejudice, in a written opinion. On October 5, 1993, Homrich and Reyes were tried by jury. After a seven day trial and nine hours of deliberation, the jury returned a verdict of guilty. On February 14, 1994, the district court sentenced Homrich to 350 months imprisonment, a period of five years supervised release and a $50 special assessment. Reyes was sentenced on Count One to life imprisonment and a period of ten years supervised release if ever released from imprisonment, a $50 special assessment and a $20,000 fine. As to Count Two, Reyes was sentenced to 240 months imprisonment to run concurrently, three years supervised release, a $50 special assessment and a $5000 fine.
 
 
 4
 Both Homrich and Reyes are currently in federal custody.
 
 II. Statement of Facts
 
 5
 The testimony and exhibits at trial demonstrated that from 1985 until February 10, 1993, Juan Reyes and Bobby Homrich conspired with the named co-defendants and other individuals including Gordon Darby, Vernon McCarty, Robin Ensley, Steven Wilson and others to obtain large quantities of marijuana and cocaine and some quantities of heroin and methamphetamine from the State of Texas to be distributed in the State of Michigan. Reyes had been engaged in drug trafficking in the Western District of Michigan for over ten years. In addition to Reyes's drug trafficking, he also engaged in extensive money laundering transactions. He transmitted drug proceeds via Western Union. Transmittals were sent by each of the named defendants including Bobby Homrich. Homrich used an alias, "Roger Hunt" when he transmitted drug funds. Other facts about the conspiracy will be related as relevant.
 
 III. Discussion
 
 6
 A. The District Court Did Not Err By Admitting Certain Evidence.
 
 
 7
 Reyes argues the district court erred by allowing the introduction of certain evidence which, Reyes contends, had little or no probative value and was greatly prejudicial. The evidence objected to includes:
 
 
 8
 1) the death of Steven Cooper;
 
 
 9
 2) the district court's request that a witness demonstrate the simulated use of cocaine;
 
 
 10
 3) Reyes's possession of various weapons and threats to use those weapons to maintain order;
 
 
 11
 4) Reyes's threats of violence, force and intimidation against accomplices to collect drug debts;
 
 
 12
 5) Reyes's beating and rape of his wife; and
 
 
 13
 6) the fact Reyes was on probation for a violent crime at the time of his arrest.
 
 
 14
 Reyes raises these objections for the first time on appeal. Because Reyes did not object at trial, these evidentiary objections are reviewed for plain error. Fed. R. Crim. P. 52(b); United States v. Morrow, 977 F.2d 222 (6th Cir. 1992), en banc, cert. denied, U.S. , 113 S. Ct. 2969 (1993). "'Plain errors are limited to those harmful ones so rank that they should have been apparent to the trial judge without objection, or that strike at fundamental fairness, honesty, or public reputation of the trial."' United States v. Evans, 883 F.2d 496, 498 (6th Cir. 1989) (quoting United States v. Causey, 834 F.2d 1277, 1281 (6th Cir. 1987), cert. denied, 486 U.S. 1034 (1988)). A review of the record shows all six assertions of evidentiary error are without merit. The district court did not err in the admission of evidence.
 
 
 15
 B. A Rational Finder of Fact Could Have Found Defendant Homrich Guilty of Count I.
 
 1. Standard of Review
 
 16
 Homrich argues there is insufficient evidence to support his conviction on Count One. An appellate court in reviewing the sufficiency of the evidence determines whether "viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." United States v. Lee, 991 F.2d 343 (6th Cir. 1993).
 
 2. Elements of 21 U.S.C. Sec. 846 Offense
 
 17
 To meet its burden of proof in a drug conspiracy, the Government must show 1) the existence of an agreement to violate the drug laws and 2) that the defendant knew of, intended to join, and participated in the conspiracy. United States v. Ferguson, 23 F.3d 135, 140 (6th Cir.), cert. denied, 115 S.Ct. 259 (1994). Homrich concedes the existence of a conspiracy between Reyes, Darby, Mendoza, Robin Ensley, Garcia, Huckleberry, Groenendal, Cindy Reyes and Barrientes but submits he had no connection to the conspiracy, "although he had the misfortune of being acquainted with people who were dealing drugs in the conspiracy." See Homrich's Brief at 35. Thus the question is whether the government presented evidence sufficient for any rational trier of fact to have found Homrich was connected to the conspiracy.
 
 3. Homrich's Connection to the Conspiracy
 
 18
 The Government's primary witness, Darby, testified Homrich picked up heroin from Reyes and that Homrich "could handle selling the cocaine and the heroin that he could bring up [and] that he really didn't need [his former supplier any more]." JA at 234.
 
 
 19
 Though there was some conflicting testimony, this court may not reweigh the evidence or substitute its credibility judgments. Ferguson, 23 F.3d at 140; Evans, 883 F.2d at 501. Viewing the evidence "in the light most favorable to the prosecution," there is sufficient evidence for a rational trier of fact to find Homrich "knew of intended to join and participated in the conspiracy. Ferguson, 23 F.3d at 140.
 
 
 20
 C. The District Court Did Not Abuse Its Discretion By Denying Homrich's Pre-Trial Severance Motion.
 
 
 21
 Homrich argues the district court abused its discretion by denying Homrich's motion to sever his trial from his co-defendant Reyes, pursuant to Fed. R. Crim. P. 14. Homrich failed to renew this motion at the close of evidence. When a defendant fails to renew a motion for severance at the close of all evidence, the review of the issue is limited to plain error. United States v. Patrick, 965 F.2d 1390, 1400 (6th Cir.), cert. denied, 113 S.Ct. 376 (1992).
 
 
 22
 A district court's denial of a motion for severance is a matter of discretion. United States v. Franks, 511 F.2d 25, 29 (6th Cir.) cert. denied, 422 U.S. 1042 (1975). Generally, defendants who are indicted jointly are tried in the same proceeding. United States v. Warner, 955 F.2d 441, 447 (6th Cir.), cert. denied, 112 S.Ct. 3050 (1992). A motion for severance should be granted if the defendant makes a "strong showing of prejudice" United States v. Paulino, 935 F.2d 739, 751 (6th Cir. 1991), cert. denied, 502 U.S. 1036 (1992) or "substantial prejudice" Warner, 955 F.2d at 447. Homrich argues that the majority of the evidence presented at trial pertained to Reyes solely. However, this alone is not a reason to sever the trials. Warner, 955 F.2d at 448. Homrich does not show the jury was unable to distinguish between evidence regarding him and Reyes.
 
 
 23
 D. The District Court Did Not Abuse Its Discretion by Not Allowing Reyes to Address the Jury.
 
 
 24
 During the course of the trial, Reyes did not testify. At the close of evidence Reyes told the judge he wanted to address the jury. The discussion between Reyes and the district court concerned Reyes's wish to rebut evidence that he was the leader of the conspiracy. The court cautioned Reyes to address that concern during the sentencing hearing. The court stated:
 
 
 25
 I think you could, you can get yourself into grave danger if you talk to the jury.
 
 
 26
 In the first place, if you did it during trial, Mr. Redford would have the right to cross examine you, and the trial part is already over with, and that might be hazardous to you, as we have talked before. But I think that time to worry about the leader part is not now. I think that if I were you, I would let your lawyer make the final argument, which Mr. Redford has already done, and Mr. Stanley wants to make one on behalf of Mr. Homrich, and then will see what the jury does.
 
 
 27
 JA at 600-01. Reyes petitioned the court to address the jury again on February 10, 1994, at a hearing to consider a Petition to Withdraw Attorney. The district court ruled Reyes's attorney properly counseled Reyes not to take the stand during trial.
 
 
 28
 In United States v. Joelson, 7 F.3d 174, 177 (9th Cir.) cert. denied, 114 S.Ct. 620 (1993), a defendant requested the appointment of new counsel because his attorney did not want him to testify. The district court engaged in a lengthy discussion with the defendant as to why he should follow his attorney's advice and not testify. The Ninth Circuit held that, although the discussion was extensive, it was not so egregious that it impaired the defendant's ability to knowingly and willingly waive his right to testify. In this case, the district court did not abuse its discretion by advising Reyes, in a much less extensive manner than found in Joelson, to follow his attorney's advice.
 
 
 29
 E. The Prosecutor's Comments Regarding the Effect of the Plea Agreement Were Not Error.
 
 
 30
 Reyes asserts the Government committed plain error when the prosecutor stated in closing argument:
 
 
 31
 When you go back in your jury room, look at the plea agreements in this case. What happens if somebody lies? That is the one thing that can get them in the most trouble at all. Their plea agreements are nullified if they falsely accuse an innocent person. Their plea agreements are nullified as the judge instructed.
 
 
 32
 JA at 595.
 
 
 33
 In United States v. Carroll, 26 F.3d 1380 (6th Cir. 1994), this circuit clarified the proper test for evaluating allegations of prosecutorial misconduct. The circuit reviewed three previously-applied tests (See United States v. Leon, 534 F.2d 667 (6th Cir. 1976); United States v. Bess, 593 F.2d 749 (6th Cir. 1979); and United States v. Thomas, 728 F.2d 313 (6th Cir. 1984). The Carroll court adopted the test applied in Bess for all cases involving "non-flagrant improper prosecutorial remarks." Carroll, 26 F.3d at 1387. The first step is to determine whether the prosecutor's remarks were improper. Id. In Carroll the court held where the prosecutor implied the existence of plea agreements "ensured that the witnesses were truthful," the prosecutor's conduct constituted "improper vouching" for the credibility of the witnesses. Id. In the instant case, the same implication can be drawn from the prosecutor's statements that the witnesses couldn't be lying because to do so would jeopardize their freedom.
 
 
 34
 Having determined the remarks were improper, the next step is to determine whether the remarks were flagrant or non-flagrant. The following factors for determining flagrancy were articulated in Leon and adopted by Carroll:
 
 
 35
 the degree to which the remarks complained of have a tendency to mislead the jury and to prejudice the accused; whether they were isolated or extensive; whether they were deliberately or accidentally placed before the jury, and the strength of the competent proofs introduced to establish the guilt of the accused.
 
 
 36
 Carroll, 26 F.3d at 1384 (quoting Leon, 534 F.2d at 679). Applying these factors, the comments made by the prosecutor in the instant case were non-flagrant. The remarks by the prosecutor were isolated and the proofs establishing guilt were substantial.
 
 
 37
 "Where the error is not flagrant, reversal is inappropriate if either proof of defendant's guilt is overwhelming, or defense counsel failed to object to the error, or if the trial court cured the error with an admonishment to the jury." Id., at 1385 n.6. In the instant case, proof of Reyes's guilt was overwhelming and the defense counsel failed to object at trial. Thus, reversal is inappropriate.
 
 
 38
 F. The District Court Did Not Err in Sentencing Reyes and Homrich
 
 
 39
 Reyes asserts three assignments of error: (a) finding Reyes was responsible for the death of Steven Cooper and thus erred in applying an enhanced sentence pursuant to 21 U.S.C. Sec. 841(b)(1)(A); (b) attributing a substantial amount of drugs to Reyes; and (c) imposing fines of $20,000 and $5,000 in Counts I and II, respectively.
 
 
 40
 Homrich also asserts three assignments of error: (a) finding the career offender provision applied to Homrich's conspiracy conviction under 21 U.S.C. Sec. 846; (b) including Homrich's 1981 conviction for attempted second degree burglary as a crime of violence under the career offender provision; and (c) the amount of drugs attributed to Homrich for the determination of his offense level.
 
 1. Standard of Review
 
 41
 This court reviews factual findings of the district court connected with sentencing for clear error. United States v. Luster, 889 F.2d 1523 (6th Cir. 1989). The applicability of a sentencing provision is reviewed de novo. United States v. Garner, 940 F.2d 172, 173 (6th Cir. 1991).
 
 2. Reyes's Assignments of Error
 
 42
 a. The District Court Properly Gave Reyes an Enhanced Sentence Based on the Death of Steven Cooper.
 
 
 43
 USSG Sec. 2D1.1 provides for a base offense level of 43
 
 
 44
 if the defendant is convicted under 21 U.S.C. Sec. 841(b)(1)(A) ... and the offense of conviction establishes that death or serious bodily injury resulted from the use of the substance and that the defendant committed the offense after one or more prior convictions for a similar offense; ...
 
 
 45
 The district court held Reyes was responsible for Steven Cooper's death by overdose of cocaine. Reyes argues the evidence does not prove that Steven Cooper died from an overdose. The district court's factual findings, however, must stand unless they are clearly erroneous. United States v. Gonzales, 929 F.2d 213 (6th Cir. 1991). In the instant case the district court considered in detail the testimony presented linking Reyes's supply of cocaine to Cooper's death. A careful consideration of the record shows the factual findings made by the court were not clearly erroneous.
 
 
 46
 b. The District Court Did Not Err By Attributing the Full Amount of Drugs Involved in the Conspiracy to Reyes.
 
 
 47
 The government must prove the quantity of drugs by a preponderance of the evidence. United States v. Sims, 975 F.2d 1225, (6th Cir. 1992) cert. denied, 113 S.Ct. 1315 (1993). If the amount cannot be easily determined, the district court must estimate an amount. United States v. Straughter, 950 F.2d 1223 (6th Cir. 1991), cert. denied, 502 U.S. 1119 (1992). The district court attributed the following drug amounts to Reyes:
 
 
 48
 a. 4 kilograms of methamphetamine
 
 
 49
 b. 5 ounces of heroin
 
 
 50
 c. 34.5 kilograms of cocaine
 
 
 51
 d. approximately more than 3000 pounds of marijuana
 
 
 52
 JA at 743. After a careful review of the record, it is clear the district court went to great pains to resolve conflicts in the drug amounts in Reyes's favor. The district court did not commit clear error in its determination of the amount of drugs.
 
 
 53
 c. The District Court Did Not Err by Imposing Fines of $20,000 as to Count One and $5,000 as to Count Two.
 
 
 54
 The Sentencing Guidelines provide generally, "the Court shall impose a fine in all cases." USSG Sec. 5E1.2(a). When a defendant's offense level is 38 or above, the minimum fine is $25,000. In this case Reyes's offense level was 44. Reyes argues he is unable and will not become able to pay the fine. This circuit has established that the defendant carries the burden of showing his inability to pay the fine. United States v. McGlocklin, 8 F.3d 1037 (6th Cir.) (en banc), cert. denied, 114 S.Ct. 1614 (1993). The defendant offered no argument as to why he was unable to pay the fine. Moreover, Reyes operated a major drug trafficking enterprise and $18,000 was seized at the time of Reyes's arrest. Reyes has not established his inability to pay. The record does not support a finding of clear error in the application of these fines.
 
 3. Homrich's Assignments of Error
 
 55
 a. Applicability of Career Offender Provisions to Conspiracy Conviction under 21 U.S.C. Sec. 846.
 
 
 56
 Homrich argues on appeal that the Sentencing Commission exceeded its statutory authority by including conspiracy as a triggering offense for purposes of the career offender provision of the sentencing guidelines. A panel of this circuit has recently decided this issue in United States v. Williams, F.3d, 1995 WL 296199 (6th Cir. (Tenn.)), adopting the position held by the majority of circuits that a defendant may be classified as a career offender based on a conspiracy conviction. See Williams, 1995 WL at 3. We are bound to follow the holding of another panel of this circuit and, thus, reject Homrich's argument. See Salmi v. Secretary of HHS, 774 F.2d 685, 689 (6th Cir. 1985) (the prior decision of a panel of the Court of Appeals remains controlling authority unless inconsistent decision of the United States Supreme Court requires modification or the Court of Appeals overrules the prior decision while sitting en banc).
 
 
 57
 b. 1981 Conviction for Attempted Second Degree Burglary
 
 
 58
 Homrich asserts the district court erred in finding his 1981 Colorado conviction for attempted second degree burglary was a crime of violence under USSG Sec. 4B1.1, thus qualifying as a predicate offense for the application of the armed career criminal provisions.
 
 
 59
 The incident for which Homrich was convicted involved the burglary of a pharmacy. No one was in the store when it was robbed; however, a policeman saw Homrich and pulled his service revolver to subdue him. Homrich turned and ran directly toward the officer who hit Homrich on the head with a flashlight. A knife with a blade of slightly more than four inches was found on Homrich's person after he was subdued. This offense was a crime of violence because it "otherwise involves conduct that presents a serious potential risk of physical injury to another," Sec. 4B1.1(1)(ii), and therefore is appropriate as a predicate offense. See United States v. Fish, 928 F.2d 185 (6th Cir.), cert. denied, 502 U.S. 834 (1991).
 
 
 60
 Analyzing Homrich's Colorado conviction under Fish, if the applicable statute contains "the essential elements outlined by the Supreme Court [in Taylor]," Fish, 928 F.2d at 188, even if it is an attempted burglary, the conviction will correctly be considered a "violent felony" or "crime of violence."
 
 The Colorado statute reads as follows:
 
 61
 Second degree burglary. (1) A person commits second degree burglary, if he knowingly breaks an entrance into, or enters, or remains unlawfully in a building or occupied structure with intent to commit therein a crime against property.
 
 
 62
 (2) Second degree burglary is a class 4 felony, but if it is a burglary of a dwelling, it is a class 3 felony.
 
 
 63
 This statute has the basic elements outlined in Taylor of "unlawful entry into .. a building ... with intent to commit a crime." Taylor, 110 S.Ct. at 2158. Thus, the district court did not err in counting Homrich's Colorado conviction as a "crime of violence."
 
 
 64
 c. Amount of Drugs Under USSG Sec. 1B1.3.
 
 
 65
 Homrich argues the district court erred by attributing to him between 3,500 kilograms and 7,500 kilograms of marijuana equivalent. This court will accept a district court's factual findings as to the amount of drugs for which a defendant will be held accountable unless clearly erroneous. United States v. Walton, 908 F.2d 1289, 1300-01 (6th Cir.), cert. denied, 498 U.S. 990 (1990). The government must prove the quantity of drugs by a preponderance of the evidence. Sims, supra.
 
 
 66
 The district court considered relevant conduct as required under USSG Sec. 1B1.3 in determining a base offense level for Homrich. Relevant conduct is defined in the guidelines to include acts or omissions which the defendant committed, abetted or caused in some way, and "in the case of a jointly undertaken criminal activity ... all reasonably foreseeable acts and omission of others in furtherance of the jointly undertaken criminal activity," that occurred during the offense of conviction, or were in furtherance of the offense.
 
 
 67
 In United States v. Jenkins, 4 F.3d 1338 (1993), cert. denied, 114 S.Ct. 1547 (1994), this circuit, applying USSG Sec. 1B1.3, held:
 
 
 68
 [w]hether or not a defendant had actual knowledge of particular amounts of drugs involved in joint criminal activity is not controlling if it is demonstrated by a preponderance of the evidence that it was reasonably foreseeable to the defendant that the drugs would be involved.
 
 
 69
 Id., at 1348 (citing Sims, 975 F.2d at 1244. Thus, if a preponderance of the evidence supports the finding that Homrich agreed to jointly undertake involvement in the drug distribution ring and the amount attributed to such distribution ring was reasonably foreseeable, the attribution of such an amount to Homrich is proper. The record shows the district court carefully considered whether the evidence supported a finding that Homrich was deeply involved in the conspiracy and that the conspiracy was of a grand scale. While Homrich may not have actually supplied or distributed that amount of drugs, Homrich was sufficiently involved and that amount was clearly present in the conspiracy. The district court's factual finding was not clearly erroneous as to the amount of drugs attributable to Homrich.
 
 IV. Conclusion
 
 70
 For the foregoing reasons, we AFFIRM the convictions and sentences of Reyes and Homrich by the Honorable Richard A. Enslen of the United States District court for the Western District of Michigan, Southern Division.