**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Pedro SALAZAR, Defendant–Appellant.**

**No. 89–2122.**

United States Court of Appeals, Tenth Circuit.

July 31, 1990.

**1448**

Teresa E. Storch, Asst. Federal Public Defender, Albuquerque, N.M., for defendant-appellant Pedro Salazar.

Stephen R. Kotz, Asst. U.S. Atty. (William L. Lutz, U.S. Atty., Albuquerque, N.M., with him on the brief), for plaintiff-appellee U.S.

Before TACHA and EBEL, Circuit Judges, and DUMBAULD *, Senior District Judge.

---

* The Honorable Edward Dumbauld, Senior United States District Judge, United States District Court for the Western District of Pennsylvania, sitting by designation.

1. The information charged a false INS form I–705 and a false employment letter, for use in applying for adjustment of status under 8 U.S.C. 1160(a) and (b).

2. It is there enacted that:
   Whoever—
   (i) files an application for adjustment of status under this section and knowingly and willfully falsifies, conceals, or covers up a material fact or makes any false, fictitious, or fraudulent statements or representations, or makes

DUMBAULD, Senior District Judge.

Appellant, a fabricator of false immigration documents [1] in violation of 8 U.S.C. 1160(b)(7)(A)(ii) [2] entered into a guilty plea agreement. He now contends that the Government violated the agreement at sentencing. We affirm.

■ It is of course a truism that the Government is bound by its plea agreements. *U.S. v. Pogue,* 865 F.2d 226, 227–28 (10th Cir.1989); *U.S. v. Shorteeth,* 887 F.2d 253, 256 (10th Cir.1989); *Giglio v. U.S.,* 405 U.S. 150, 154, 92 S.Ct. 763, 766, 31 L.Ed.2d 104 (1972). One recalls, in this connection, the ringing words of Justice Holmes that it is a lesser evil "that some criminals should escape than that the government should play an ignoble part." *Olmstead v. U.S.,* 277 U.S. 438, 470, 48 S.Ct. 564, 575, 72 L.Ed. 944 (1928). See also, in general, Thomas Nocker and Gregory French, "Estoppel: What's the Government's Word Worth?" 24 The International Lawyer (1990) 409, 425–430. However, it seems clear upon analysis of the facts and the terms of the plea agreement that there has been no violation on the part of the Government.

The agreement in the case at bar provided that "The United States agrees *not to bring further charges* against defendant for any act the defendant may have committed on or before December 31, 1988, which arises out of the creation and supply[ing] of false documents (italics supplied)." [3] Clearly this language refers to the institution of additional charges, by indictment or information. It does not impose any obligations on the Government

or uses any false writing or document knowing the same to contain any false, fictitious, or fraudulent statement or entry, or
(ii) creates or supplies a false writing or document for use in making such an application, shall be fined in accordance with Title 18, or imprisoned not more than five years, or both.

3. Appeal Record (hereinafter R.) item 3, ¶ 2. The Government made no agreement for a specific sentence, or to approve, oppose, or not oppose any request of defendant for a particular sentence, and reserved the right to make known for sentencing purposes "any information which the Government believes may be helpful to the Court." *Ibid.,* ¶ 3.

with respect to any position it may take *with regard to the appropriate sentence to be imposed in the case at bar,* brought pursuant to Information No. 89–95. In fact paragraph 3 of the plea agreement expressly reserves and preserves the Government's freedom of action with regard to its position concerning the appropriate sentence in the case at bar.

■ Appellant argues that it constitutes bringing "further charges" for acts committed before December 31, 1988, for the Government to point out at the sentencing hearing that appellant had committed the same crime almost 100 times during "a seven to eight month period" before he was prosecuted.[4] The Government knew of these transactions, and by further investigation could have established that 90 of them were violations of law (and that apparently three were bona fide instances of actual employment).

It is true that the Government did not know which of the 93 sets of papers were spurious and which were the genuine ones, but it could have found out by doing some work. In the language of the old maxim, *certum est quod reddi potest.* The appellant is not entitled to much praise as a public benefactor (or to any reduction in sentence) for informing the Government which were the three [5] bona fide instances of actual employment. His plea agreement did not require him to accelerate the Government's research in this manner; [6] he doubtless volunteered this help from self-serving motives.

The Government had evidence also that appellant sold the "phony" papers for $150 to $300. Thus he earned a minimum of $13,500 (and perhaps almost $27,000) from criminal activity, as the Court found, whereas he earned only $2,100 to $2,400 from legitimate labor during the same 7 to 8 month period. (Tr. 15). The revenue

from crime was thus, as the Court found, "a substantial portion of his income."

■ Consequently, the Government quite properly and legitimately could demonstrate, and the sentencing judge find, that appellant should be sentenced under Guideline 4B1.3 which provides:

> If the defendant committed an offense as part of a pattern of criminal conduct engaged in as a livelihood, his offense level shall be not less than 13, unless § 3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than 11.

Appended to this text the drafters have provided the following commentary:

*Application Notes:*

1. "Pattern of criminal conduct" means planned criminal acts occurring over a substantial period of time. Such acts may involve a single course of conduct or independent offenses.

2. "Engaged in as a livelihood" means that (1) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law (currently 2000 × the hourly minimum wage under Federal law is $6,700); and (2) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (*e.g.,* the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for his criminal conduct).

*Background:* Section 4B1.3 implements 28 U.S.C. § 994(i)(2), which directs the Commission to ensure that the guidelines specify a "substantial term of imprisonment" for a defendant who committed an offense as part of a pattern of criminal

---

4. Transcript of sentencing hearing (hereafter Tr.) 5.

5. R. item 4, p. 7, shows 93 sets of papers. It was stipulated that 90 were fake. Tr. 5. Counsel at that hearing also stated that perhaps four or five were genuine. *Ibid.,* 12.

6. On the doctrine of "inevitable discovery" see *Nix v. Williams,* 467 U.S. 431, 446–47, 104 S.Ct. 2501, 2510–11, 81 L.Ed.2d 377 (1984); and *New York v. Quarles,* 467 U.S. 649, 104 S.Ct. 2626, 2632, 2649–50, 81 L.Ed.2d 550 (1984).

conduct from which he derived a substantial portion of his income.

The 90 criminal offenses of similar nature generating income in five figures, certainly constitute a pattern of dealing engaged in as a "livelihood." The crucial question appellant raises is whether the period April–November, 1988 constitutes "a substantial period of time." We are satisfied that it does. Appellant was continually engaged in this type of crime from the time Congress passed the act permitting the adjustment of status which the false documents supplied by appellant were intended to wrongly facilitate up until the time "when he got caught" as the sentencing judge pointed out. (Tr. 15). During the period involved, appellant supplied numerous fraudulent documents, and received substantial revenue therefrom, (*Ibid.*).

We therefore conclude that application of Guideline 4B1.3 in sentencing appellant was not error; *a fortiori* it was not "plain error" as appellant argues.

The judgment of the District Court is AFFIRMED.