**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Thomas TAYLOR, Defendant–Appellant.**

No. 94–2530.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 28, 1994.

Decided Jan. 20, 1995.

Barry Rand Elden, Asst. U.S. Atty., John Gallo (argued), Office of U.S. Atty., Criminal Receiving, Appellate Div., Chicago, IL, for U.S.

Carol A. Brook, Mary M. Rowland (argued), Lynn C. Hartfield, Office of the Federal Defender Program, Chicago, IL, for Thomas J. Taylor.

Before EASTERBROOK, MANION and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Thomas Taylor pleaded guilty to one count of unlawful possession of stolen mail in violation of 18 U.S.C. § 1708. At sentencing, Taylor received an enhancement under the Sentencing Guidelines for criminal livelihood and a reduction for acceptance of responsibility. He was sentenced to 24 months in prison to be followed by three years supervised release. He was also fined $5,000.00. On appeal, Taylor challenges only the district court's finding that he qualified for the criminal livelihood enhancement. We affirm.

## I. Background

On October 21, 1993, Taylor was arrested for stealing mail. It was the second time in several weeks that he had been seen shadowing a mail carrier. When the officers approached him, Taylor attempted to stash several pieces of mail in some nearby bushes. The police recovered three pieces of mail from Taylor that day—two first class letters containing department store credit cards and another first class letter containing a public aid check.

This was not the first time Taylor had been arrested for stealing mail. Taylor's criminal history includes numerous arrests for mail theft (along with other assorted criminal activities) and he had, just 16 months earlier, finished serving the sentence for a previous federal conviction for possession of stolen mail. In addition, Taylor admitted to stealing mail on other occasions not reflected in his criminal record.

Taylor is also a heroin addict. He admitted this both to the officers who interviewed him after his arrest and to the United States Pretrial Services Officer. At his sentencing hearing Taylor stated that he required $100

to $150 per day to support his habit and admitted to postal inspectors that he stole mail to support his addiction.

At sentencing, the district court raised the possibility of adding a criminal livelihood enhancement. Such an enhancement was not mentioned in Taylor's plea agreement and, while it was mentioned in the pre-sentence report, it was not specifically recommended by the government. The court, however, felt that this was a strong case for the application of this enhancement and therefore applied it in this case. This enhancement brought Taylor's offense level to 13. The court then reduced the offense level by two for acceptance of responsibility and sentenced Taylor to 24 months imprisonment to be followed by three years supervised release. The court also fined Taylor $5,000.

## II. Analysis

■■■ On appeal Taylor argues that the district judge erred in applying the criminal livelihood enhancement in this case. The criminal livelihood enhancement is found in the United States Sentencing Guidelines ("USSG") § 4B1.3 and provides that

> If the defendant committed an offense as part of a pattern of criminal conduct engaged in as a livelihood, his offense level shall be not less that 13, unless § 3E1.1 (Acceptance of Responsibility) applies, in which event his offense level shall be not less than 11.

Application Note 2 to this section states: "Engaged in as a livelihood" means that (1) the defendant derived income from the pattern of criminal conduct that in any twelve-month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (2) the totality of circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve month period (e.g., the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for his criminal conduct).

The object of this section is to distinguish the professional from the amateur criminal and punish the former more heavily. *United*

*States v. Rosengard,* 949 F.2d 905, 908–09 (7th Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 2939, 119 L.Ed.2d 564 (1992).

■■■ Whether Taylor engaged in stealing mail as his livelihood is a finding of fact. Our review for factual findings is highly deferential and we must accept such findings on appeal unless they are clearly erroneous. *Id.* at 908; 18 U.S.C. § 3742(e). Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous. *United States v. Brown,* 900 F.2d 1098, 1102 (7th Cir.1990).

In this case, Taylor challenges the application of this enhancement to his situation and also challenges the proof used to support this enhancement. He specifically alleges that the government failed to show that he had derived a net income from his criminal activities in an amount exceeding 2,000 times the then-existing minimum wage in the twelve months prior to his arrest, approximately $8,500. *Lee v. United States,* 939 F.2d 503, 504 (7th Cir.1991) (livelihood is a matter of net rather than gross income). In Taylor's view, the government was required to bring forth direct evidence showing that he received $8,500 from his activities as a mail thief (*e.g.,* checks, purchases made with stolen credit cards, etc.). He contends that without such evidence, it was not reasonable for the district court to infer that he received the threshold amount from other crimes in addition to those for which he was convicted.

It is true that in this case the government did not proffer direct evidence proving that Taylor stole $8,500 from the mails. Taylor admits to possessing stolen mail valued at $2,741.42 for the year. But beyond this, the record contains no direct evidence concerning Taylor's receipts from stealing mail. The district court did, however, find that Taylor had a heroin habit that cost between $100 and $150 per day "whenever [he] could get it" and that Taylor admitted to stealing mail in order to sustain this addiction. Even at twenty-five dollars per day, the court found that Taylor's heroin habit required over $8,500 a year. The evidence also showed that Taylor had no legitimate income for the twelve months prior to his arrest, that he

held a job for only three months in the prior eleven years, and that he had an extensive history in the mail theft business. This evidence is certainly relevant to the application of this enhancement and, after considering it all in context, the court had no difficulty concluding that Taylor stole the required amount from the mails that year in order to live and feed his drug habit. *See United States v. Morse*, 983 F.2d 851, 853 (8th Cir. 1993) (in addition to evidence concerning the amount of money received by the defendant, gambling addiction and no steady source of income were relevant to district court's finding that this enhancement applied); *Rosengard*, 949 F.2d at 907, 909 (income tax returns declaring income in excess of $24,000 per year, coupled with job history showing no legitimate employment in the relevant time period, was evidence from which district court could reasonably find that defendant received income from illegal gambling exceeding the threshold amount); *United States v. Luster*, 889 F.2d 1523, 1530 (6th Cir.1989) (employment history and financial resources are legitimate areas of inquiry under § 4B1.3 where they may serve to demonstrate "a pattern of criminal conduct from which a defendant derives a substantial portion of his income, which is indicative that criminal activity is defendant's primary source of livelihood"). The district court's conclusion in this case was not unreasonable and it was therefore not clear error to apply this enhancement.

 As a final matter and in response to concerns raised by Taylor, we agree that criminal history alone is not sufficient to warrant an enhancement under this section. *United States v. Oliver*, 908 F.2d 260, 266 (8th Cir.1990) (section 4B1.3 was not intended to punish individuals who are merely frequent offenders). Nor do we think that the lack of evidence regarding a legitimate source of income would, by itself, be enough to support this enhancement. *Luster*, 889 F.2d at 1530 (criminal livelihood guideline is not based on financial status alone). But we are not faced with either situation in this case. Taylor was not caught by this enhancement merely because he was poor or a recidivist. The evidence presented at sentencing indicated that Taylor engaged in a pattern of illegal conduct from which he derived his living; the very conduct targeted by this enhancement. *Id.; see also Oliver*, 908 F.2d at 266 (section 4B1.3 was designed to punish the defendant whose current crime was part of a larger pattern of illegal pecuniary activity). And even so, "[t]he fact that the guideline may have a greater impact on indigents, who do not have any means of livelihood other than crime, is an incidental effect of the statute's objective to prevent recidivism by imposing heavier penalties on professional criminals who make their living from crime." *Luster*, 889 F.2d at 1530. Taylor's situation falls squarely within the stated purpose of this enhancement.

### III. Conclusion

For the foregoing reasons, Taylor's sentence is

AFFIRMED.