111 F.3d 134
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Patricia K. MAHER, Defendant-Appellant.
 No. 96-3544.
 United States Court of Appeals, Seventh Circuit.
 Argued March 5, 1997.
Decided March 24, 1997.
 
 Before FLAUM, MANION, and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Pursuant to a written plea agreement, Patricia Maher pleaded guilty to possession of document-making implements with the intent to use the implements in the production of false identification documents, in violation of 18 U.S.C. §§ 1028(a)(5) and 2. Maher appeals the district court's decision to enhance her offense level for engaging in a pattern of criminal conduct as a livelihood pursuant to U.S.S.G. § 4B1.3. We affirm.
 
 BACKGROUND
 
 2
 Maher and her husband, codefendant Shane Maher, began operating a booth at a flea market in 1990. At the booth, they sold personal items and ran a VCR cleaning and repair operation. Additional sources of income included: performing odd jobs for a friend, Bernice Yarnik; holding garage sales; and training dogs.
 
 
 3
 Between October 1, 1994 and September 30, 1995, Maher testified that she earned a total of $81,590. She testified that in March 1995, she began selling false identification documents from the flea market booth. Between March and September of 1995, Maher earned $67,150 from these sales. Therefore, she earned approximately $15,440 from legitimate activities.
 
 
 4
 The district court found that the sales of illegal ID's were planned criminal acts occurring over a substantial period of time. The court stated that there was no doubt the amount of money earned from the criminal acts exceeded the then existing minimum hourly wage by 2,000 times. The court also found that "[f]rom October of '94 through September of '95, $69,000 approximately out of a total of approximately $83,000 was derived from [Maher's] criminal activities.''
 
 
 5
 The district court concluded that Maher was subject to the enhancement under U.S.S.G. § 4B1.3 for committing a crime as part of a pattern of criminal conduct engaged in as a livelihood, and, therefore, determined that her offense level was 11.[1] Her criminal history category was I, resulting in a sentencing range of 8 to 14 months. The court sentenced Maher to a four-month term of imprisonment and, upon release, to a four-month term of home detention pursuant to U.S.S.G. § 5C1.1(d).
 
 ANALYSIS
 Section 4B1.3 provides:
 
 6
 If a defendant committed an offense as part of a pattern of criminal conduct engaged in as a livelihood, [her] offense level shall not be less than 13, unless § 3E1.1 (Acceptance of Responsibility) applies, in which event [her] offense level shall be not less than 11.
 
 Application Note 2 to this section states:
 
 7
 "engaged in a livelihood" means that (1) the defendant derived income from the pattern of criminal conduct that in any twelve month period exceeded 2,000 times the then existing hourly minimum wage under federal law; and (2) the totality of the circumstances shows that such criminal conduct was the defendant's primary occupation in that twelve-month period (e.g., the defendant engaged in criminal conduct rather than regular, legitimate employment; or the defendant's legitimate employment was merely a front for his criminal conduct).
 
 The background to this section states:
 
 8
 Section 4B1.3 implements 28 U.S.C. § 994(I)(2), which directs the Commission to ensure that the guidelines specify "a substantial term of imprisonment" for a defendant who has committed an offense as part of a pattern of criminal conduct from which [she] derived a substantial part of [her] income.
 
 
 9
 "The object of this section is to distinguish the professional from the amateur criminal and punish the former more heavily." United States v. Taylor, 45 F.3d 1104, 1106 (7th Cir.1995); see also United States v. Rosengard, 949 F.2d 905, 908-09 (7th cir 1991), cert. denied, 504 U.S. 973 (1992).
 
 
 10
 Whether Maher engaged in selling false ID's as a livelihood is a finding of fact. See Taylor, 45 F.3d at 1106; Rosengard, 949 F.2d at 908. This court must accept a district court's factual findings unless they are clearly erroneous. Taylor, 45 F.3d at 1106; Rosengard, 949 F.2d at 908. "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Taylor, 45 F.3d at 1006.
 
 
 11
 Maher challenges the district court's application of the § 4B1.3 enhancement to her. She asserts that selling false ID's was not her primary occupation as defined by the Guidelines because she derived a substantial income from her illegal conduct for only four months, not for twelve months.[2] Essentially, she argues that the district court should have focused on the amount of time she engaged in her illegal conduct, rather than the amount of money she earned from that conduct, to determine whether the illegal activities constituted her primary occupation.
 
 
 12
 This court has approved the method used by the district court in determining whether Maher was subject to the § 4B1.3 enhancement. In Lee v. United States, 939 F.2d 503 (7th Cir.1991),[3] we approved of using a defendant's income to determine whether illegal conduct constituted that defendant's livelihood. Id. at 504. Moreover, we approved the sentencing court's comparison between illegal income earned during a five-month period and legitimate income derived during same period. The district court did not employ this method of comparison. Rather, it compared the illegal income she earned from March to September 1995 with the legal income she earned over a full year (October 1994 to September 1995). Had the district court used the method approved of in Lee, the difference between her illegal and legal income would have been even more drastic; $65,450 illegal income and $2,090 legal income. Id. Other circuits have approved of using income received in periods shorter than one year as a method of determining whether illegal conduct constituted a defendant's primary occupation. See, e.g., United States v. Kellams, 26 F.3d 646 (6th Cir.1994) (nine months); United States v. Reed, 951 F.2d 97 (6th Cir.1991) (seven months); United States v. Cryer, 925 F.2d 828 (5th Cir.1991) (four months); United States v. Salazar, 909 F.2d 1447 (10th Cir.1990) (eight months); United States v. Luster, 889 F.2d 1523 (6th Cir1989) (upholding comparison of illegal income to legal income earned over three months under § 4B1.3 predecessor).
 
 
 13
 The district court did not err in using Maher's income to determine her primary occupation. As stated above, this court and others have approved of using income as a method for determining a defendant's primary occupation. That the district court chose this method over that advocated by Maher is not clear error. Were we to hold otherwise, criminals could avoid the § 4B1.3 enhancement simply by restricting their illegal activities to a few months out of each year. We cannot sanction this result. The record shows that Maher earned a little more than 80% of her total earned income from her illegal activities. It is also significant to note that in the last three months prior to her arrest Maher was taking in over $18,000 per month on phony ID's. Thus it was not clearly erroneous to conclude, based on these figures, that making false ID's was Maher's primary occupation.
 
 
 14
 In what appears to be a second basis for challenging the district court's application of § 4B1.3, Maher seeks to distinguish these cases by arguing that some of the defendants did not have legitimate employment. She asserts that because their only income was illegal, their criminal conduct necessarily had to be their primary occupation. On the other hand, Maher argues that she had legitimate sources of income during the entire twelve-month period. Moreover, she contends that her legitimate employment was not merely a front for her illegal activities. She concludes that, because her circumstances do not mirror the two examples given in Application Note 2, she did not engage in the criminal conduct as a primary occupation.
 
 
 15
 However, Application Note 2 instructs courts to consider the totality of the circumstances when making a determination under § 4B1.3. The examples provided are just that--examples. Here, the district court considered the totality of the circumstances. It was aware of Maher's financial circumstances and that she earned illegal income for only seven months, accumulating the majority of this illegal income over a four-month period. As stated above, the district court's use of these income figures to determine her primary occupation was not unreasonable. In fact, if the court were to use a net income figure discussed in Lee, Maher's meager income from legitimate sources would probably show a loss. Therefore, the court did not clearly err in imposing the § 4B1.3 enhancement. See Taylor, 45 F.3d at 1107 ("The district court's conclusion ... was not unreasonable and it was therefore not clear error to apply this enhancement.").
 
 
 16
 For these reasons, the district court's judgment is AFFIRMED.
 
 
 
 [1]
 Had the district court not enhanced Maher's sentence under § 4B1.3, her base offense level would have been 6 pursuant to § 2F1.1. The Probation Office recommended increasing the offense level by 2 for more than minimal planning, and reducing it 2 levels for acceptance of responsibility, resulting in an offense level of 6. This would have yielded a sentencing range of 0 to 6 months
 
 
 [2]
 Maher concedes that she engaged in a pattern of criminal conduct and that she derived income in excess of 2,000 times the minimum hourly wage from her illegal activities
 
 
 [3]
 Lee was decided under the predecessor of § 4B1.3. The predecessor was amended by substituting "engaged in as a livelihood" for "from which he derived a substantial portion of his income." See U.S.S.G.App. C Am. 269 (effective Nov. 1, 1989). Further, Application Note 2 was added to explain the new term